Linda MEIER et al., Minors, by and Through Joyce Meier Ray, Their Mother and Next Friend, Respondents,

v.

Ernest Junior MORELAND, Appellant.

No. 51429.

Supreme Court of Missouri,
Division No. 1.

Sept. 12, 1966.

Thurman, Nixon, Smith & Howald, Robert Lee Smith, John W. Howald, Hillsboro, for respondents.

Robert Lee Campbell, Clayton, for defendant-appellant.

HOUSER, Commissioner.

Action for damages for the death of Eugene James Meier. Plaintiffs are his three minor daughters, proceeding by their mother and next friend. The death occurred as a result of a head-on collision between two automobiles driven by the deceased and the defendant Ernest Junior Moreland. Eleven jurors signed a verdict for plaintiffs for $25,000 damages. Defendant has appealed from the ensuing judgment.

Defendant filed a motion for a directed verdict at the close of plaintiff's case. The motion was overruled. Defendant stood on the motion and put on no evidence. On appeal defendant claims that the court erred in failing to direct a verdict for defendant

because (1) plaintiff's evidence was so sketchy that a verdict could only be based upon surmise, speculation and conjecture; (2) the evidence disclosed that plaintiffs' decedent was guilty of contributory negligence as a matter of law in operating his automobile (a) on the wrong side of the road and (b) at a speed which the jury found to be negligent in accordance with Instruction No. 1.

The only eyewitnesses were the drivers of the two cars. Defendant, the only survivor, did not appear personally at the trial and no evidence was introduced on his behalf. Plaintiffs' case consisted of the death certificate, a stipulation by defendant's counsel that deceased was killed as a result of this collision, admissions by defendant at the coroner's inquest, some photographs of deceased's Plymouth automobile, and the testimony of a state highway patrol trooper and the widow.

Defendant made the following admissions against interest at the coroner's inquest: "Q. Would you just tell us in your own words what you were doing and what transpired during this time of the accident? A. Well, I had been to St. Charles. I came out in the fog. I made a wrong turn, came down that road, I seen I was on the wrong road and I turned around and went back, started back to interstate 70. Q. Where had you intended to go? A. I was going back home. When I came out of St. Charles I got over on the wrong road in the fog. I couldn't see. Q. Then you proceeded up this far before you noticed you were on the wrong road. A. Before I realized where I was at. Q. Do you have any idea what speed you were traveling at that time? A. Oh, some where around forty to forty five. Q. What would you say the distance of visibility would be? A. Thirty or fifty feet, it wasn't too good."

The highway patrol trooper received a call at 1:12 a.m. and proceeded to the scene of the accident, and made an investigation. He testified as follows: The highway runs north and south at that point.

The 2-lane concrete pavement is straight with a slight up grade to the south. He observed two vehicles, decedent's Plymouth on the east side of the road, headed in a generally southeastern direction (it had been traveling north) and defendant's Oldsmobile, which was also off the road on the east side headed in a generally southeastern direction (it had been traveling south). The left side and fourteen inches of the front of the Plymouth were damaged. The damage started at the front, taking in the left front headlight, and down the left side. The left door post was torn out. The damage extended on back past the left rear wheel housing. About eighteen inches of the left front portion of the Oldsmobile was damaged. There was only one tire mark on the pavement, "which would have been by the 1956 Oldsmobile." It started three inches to the east of the center line of the pavement and continued down along the center line a short distance, then veered to the east side of the road, going off onto the shoulder and led up to the Oldsmobile where the Oldsmobile came to rest on the east side of the road. There were *no* tire marks whatsoever in the southbound lane. The Plymouth did not leave any tire marks on the pavement. The tire marks from the Plymouth were on the east shoulder of the road, which would have been a lane of traffic for a northbound automobile—the right side of the road of the northbound lane. There was debris on the highway when the trooper arrived on the scene. The major concentration of debris was in the northbound lane, although there was some debris in the southbound lane. It was extremely foggy that evening. Visibility was very limited. "What you could see in your own headlights would be approximately fifty feet, the maximum." At the scene defendant stated to the trooper that he had been traveling south at that time; that the fog was very heavy; that visibility was very limited; that he saw the other vehicle's headlights—the dim headlight in the fog, and then they hit. Defendant stated he thought he was far

enough over but he was not sure. He did not say he was on his side of the road or on the other side; he did not know whether he was on his own side of the road or not. He made a statement relative to his speed but the trooper did not recall what it was. He stated that he had been in a tavern at St. Charles, where he drank one beer; that he started to return home in Creve Coeur (which is 8–9 miles from St. Charles); that he made a wrong turn and went north of St. Charles beyond Winfield (20–25 miles) before realizing that he was going in the wrong direction. He was on his way back when the collision occurred. The trooper estimated that the northbound Plymouth driven by the decedent was traveling at approximately 50 m. p. h. and that the southbound Oldsmobile driven by the defendant was traveling at approximately 60 m. p. h. The trooper was not of the opinion that the tire mark on the pavement was made by the rim of the wheel hitting the ground after a blowout on the left front wheel. He testified that the mark was made by the left front tire, not by the rim, and without giving any explanation stated that it was made "after the point of impact," that it "started after the impact." Later he said that he determined that the "possible point of impact" was at the beginning of the tire mark. There was "nothing other than that to indicate clearly where the point of impact was." From the center of the Plymouth tire to the outside edge of the fender is from ten to twelve inches.

At plaintiffs' request the court gave Instruction No. 1 which, after hypothesizing that Eugene James Meier was driving his automobile north on U. S. Highway 79 in Lincoln County and that defendant was driving his automobile south, and the collision between the two automobiles, contained the following submission of negligence: "and if you further find that at the time and place of said collision and immediately before said collision it was dark and foggy on said highway so that defendant could then only see a distance of 30 to 50 feet ahead of him on said highway but that defendant then drove his automobile at a speed of 40 to 45 miles an hour or more, and if you further find that such speed was a high and excessive speed for defendant to drive his automobile there under the circumstances shown in evidence, and if you further find that defendant also drove his automobile in such a way so that part of his automobile was to its left of the center of the paved part of said highway and that part of his automobile was to its left of said center of the highway at the time of collision, and if you further find that in so operating his automobile on said occasion defendant failed to exercise the highest degree of care then you are instructed that defendant was negligent, * * *." The court gave Instruction No. 3 at defendant's request, as follows: "The Court instructs the jury that if you find and believe from the evidence that at the time of the collision mentioned in evidence, deceased was operating a motor vehicle and that any portion of said motor vehicle was across the center line of Highway 79, and that the failure, if so, of deceased, to operate his motor vehicle upon the right half of said Highway 79 contributed to cause the death of deceased, and that by reason thereof deceased was negligent, if you so find, then your verdict shall be in favor of the defendant and against the plaintiffs."

■ On the question whether a verdict for plaintiffs could only be based upon surmise, speculation and conjecture it must be acknowledged that the evidence is brief, sparse and lacking in detail. Notwithstanding its terseness the evidence contains the essential ingredients to make a submissible case of negligence. It is circumstantial, except for defendant's admissions against interest. The stark facts surrounding the grim scene found by the state trooper, and defendant's admissions, provide a sufficient basis for reasonable minds to infer that defendant, whose visibility was limited to 30 to 50 feet, drove his automobile on the southbound lane of a state highway through

a dense fog at an excessive speed of from 40 to 60 miles per hour (from 60 to 90 feet per second), over and across the center line of the highway onto the wrong side of the highway and into violent head-on collision with the Plymouth automobile, in the northbound lane, instantly killing plaintiffs' decedent; that the Plymouth was being driven on the right or east side of the pavement, in the proper lane of traffic, and that defendant's Oldsmobile was being driven on the wrong side of the road. The essential facts, undisputed by evidence, are that after the accident the two automobiles were found and apparently came to rest on the east side of the center line of the pavement, see Mitchell v. Stolze, 375 Pa. 296, 100 A.2d 477 [2]; that the major concentration of debris was found on the east side of the center line of the pavement; that there were no tire marks in the southbound lane, to the west of the center line of the highway; that the one tire mark found on the pavement was the tire mark of defendant's automobile, on the east side of the center line; that tire marks from the Plymouth were found on the east *shoulder* of the road; that the damages to the two vehicles indicated a head-on collision; that there was no evidence from which it could be inferred that the Plymouth was traveling on the wrong side of the highway. From these facts the jury could find that defendant was negligent in the respects submitted by Instruction No. 1. Martin v. Sloan, Mo.Sup., 377 S.W.2d 252 [7] and Missouri cases cited l. c. 258; McAlexander v. Lewis, 167 Neb. 524, 93 N.W.2d 632, 77 A.L.R.2d 575; Stark's Adm'x v. Herndon's Adm'r, 292 Ky. 469, 166 S.W.2d 828 [6]; Anno. 77 A.L.R.2d 580.

Appellant's second and third points, that plaintiffs' decedent was guilty of contributory negligence as a matter of law in operating his automobile on the wrong side of the road, and at a speed that was negligent, must be disallowed.

■ We start out with the presumption that decedent was not guilty of negligence contributing to his death where, as here, the only surviving eyewitness did not attend the trial and there was no direct evidence of conduct indicating negligence on the part of decedent, unless all of the facts conclusively establish negligence on his part. See Keeney v. Callow, Mo.Sup., 349 S.W.2d 75 [9]. The presumption was not rebutted. There was no evidence of any want of due care on the part of decedent. In the absence of any other satisfactory explanation of the location of the debris, and of both automobiles after the collision, the mark from the Oldsmobile's tire, and the tire marks from the Plymouth, all of which were found east of the center line, the jury could infer that plaintiffs' decedent was not operating the Plymouth on the wrong side of the road. The presumption is fortified by the foregoing circumstantial evidence, which indicates due care on the part of decedent.

Appellant urges, however, that the physical evidence of the damages to the vehicles clearly and conclusively proves that decedent's automobile was "at least partially across the center line of Highway 79." Appellant argues that since fourteen inches of the Plymouth's front and eighteen inches of the Oldsmobile's front were damaged and since the Oldsmobile was only three inches over the center line *after* the impact, "simple arithmetic will result in decedent's car being at least partially on the wrong side of the road." This argument is based upon several unsupported assumptions, two of which are that the tire mark was made by the *left* front tire of the Oldsmobile; and that the tire mark was made after the impact. There is no evidence which compels a finding of these facts, or that as a matter of law plaintiffs' decedent was operating his automobile on the wrong side of the road.

Appellant further urges that the jury was instructed to find defendant guilty of negligence if he drove his automobile at 40–45 m. p. h.; that if such a speed was excessive and if defendant was negligent in traveling at that speed under the prevail-

ing conditions then plaintiffs' decedent was likewise guilty of negligence in traveling at 50 m. p. h. under the very same conditions. This argument is made on the theory that "what is sauce for the goose is sauce for the gander." Although ingenious, the argument does not compel a reversal. It was not an established fact that plaintiffs' decedent was traveling 50 m. p. h. The state trooper, who appeared at the scene after the collision, estimated his speed at approximately 50 m. p. h. but the jury had a right to and doubtless did disregard or reject that portion of the trooper's testimony. Here is the background: The trooper was called as plaintiffs' witness. On cross-examination he was asked whether he determined that both cars were traveling at a fairly high speed, due to the force of the collision. Plaintiffs objected but the objection was overruled. The trooper was then asked whether the automobiles were both traveling fast and he answered, "I estimated the Meier vehicle at approximately fifty; the Moreland vehicle at approximately sixty." There was no other evidence touching the speed of the Plymouth.

■ We first note that the facts upon which the trooper's estimate was based were not elicited. "The facts upon which an expert's opinion is based, like the facts sufficient to support a verdict, must measure up to the legal requirements of substantiality and probative force * * *." Craddock v. Greenberg Mercantile, Inc., Mo. Sup., 297 S.W.2d 541 [9].

■ More vitally important, a plaintiff is not conclusively bound by his witnesses' estimates of time, speed or distance. McDonough v. St. Louis Public Service Co., Mo.Sup., 350 S.W.2d 739, 745 [3]. "[E]ven where there is no other evidence or where the plaintiff so testifies himself, he is not conclusively bound by mere estimates of distance or speed." Carlson v. St. Louis Public Service Co., Mo.Sup., 358 S.W.2d 795 [7].

■ We are aware of the rule that under given circumstances a party is bound by the testimony of a trooper offered by the party and not contradicted by any of the party's other witnesses, Branch v. Gordon's Transports, Inc., Mo.App., 375 S.W. 2d 418 [5], but this rule does not apply to estimates of speed. Certainly a ruling that a driver was contributorily negligent as a matter of law should not be made upon the unsupported estimate of a trooper as to the speed of an automobile from observations made at the scene of an automobile collision after the occurrence of the collision.

The judgment is affirmed.

HIGGINS, C., concurs.

WELBORN, C., not sitting.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.