Vita VACCARO, Plaintiff-Appellant,

v.

William MOSS, Defendant-Respondent.

No. 31816.

St. Louis Court of Appeals.

Missouri.

Dec. 20, 1966.

Edward F. Downey, John J. Delabar, Lawrence E. Ehrhart, Jack V. Hoskins, St. Louis, for plaintiff-appellant.

Adolph Schwartz, St. Louis, for defendant-respondent.

RUDDY, Judge.

This case comes to the writer on recent reassignment and is an action to recover damages for personal injuries and automobile damage, allegedly sustained by plaintiff as a result of a collision between automobiles operated by plaintiff and defendant. The jury rendered its verdict in favor of plaintiff and awarded her $1600 for personal injuries and $400 for property damage. The trial court overruled defendant's motion for judgment in accordance with his motion for a directed verdict, but sustained defendant's motion for a new trial on the grounds that the evidence did not support the giving of instruction No. 3 on humanitarian negligence and also that said instruction permitted the jury to find that defendant could have avoided the collision by "stopping" his car and "slowing it down" when there was no evidence to support a finding that the collision could have been avoided by defendant "slowing" his automobile. This appeal is by plaintiff from the order and judgment of the trial court sustaining defendant's motion for a new trial.

■ Defendant contends that plaintiff did not make a submissible case under the humanitarian doctrine, which was the only negligence submitted, and that his motion for a directed verdict at the close of all of the evidence should have been sustained. If this contention of defendant is true the alleged error in the giving of plaintiff's

instruction No. 3, if any, is immaterial. Davis v. Quality Oil Co., Mo., 353 S.W.2d 670.

 In determining whether plaintiff made a submissible case under the humanitarian doctrine, we review the evidence from a standpoint favorable to plaintiff, give her the benefit of any part of the defendant's evidence favorable to her and not contradicted by her own testimony or not contrary to her fundamental recovery theory, give her the benefit of the reasonable inferences from all the evidence, and disregard all of defendant's evidence unfavorable to plaintiff. Terminal Warehouses of St. Joseph, Inc. v. Reiners, Mo., 371 S.W.2d 311; Davis v. St. Louis Public Service Company, Mo., 316 S.W.2d 494; Delay v. Ward, Mo.App., 262 S.W.2d 626. While a plaintiff is ordinarily bound by her own personal testimony, it has often been held that she is not conclusively bound by her own testimony or that of her own witnesses as to mere estimates of time, speed, and distance. Meier v. Moreland, Mo., 406 S.W.2d 97, Brooks v. Stewart, Mo., 335 S.W.2d 104, 81 A.L.R.2d 508. Further, plaintiff is not in all events conclusively bound by the adverse testimony of her witnesses, but she or other witnesses may testify to a contradictory state of facts, leaving the whole issue to be resolved by the jury in the light of all the facts and circumstances in evidence. McDonough v. St. Louis Public Service Company, Mo., 350 S.W.2d 739; Delay v. Ward, Mo.App., 262 S.W.2d 626; Goggin v. Schoening, Mo. App., 199 S.W.2d 87.

Applying the above stated rules governing our review we think the following summary a fair statement of the evidence which we feel is sufficient to support a submission under the humanitarian doctrine.

The automobile collision in which plaintiff was injured occurred on April 4, 1961, at 5:00 P.M. on Penrose Avenue in the City of St. Louis near its intersection with Grand Avenue in said city. It was daylight at the time. Plaintiff was driving her 1961 Chevrolet automobile west on Penrose and defendant was driving his 1959 Chevrolet Station Wagon north on Grand. Grand is a four lane north-south avenue and Penrose is a thirty foot east-west avenue with no centerline marking. The surface of both avenues is of blacktop or asphalt material. There is no traffic control on Grand, but there is a stop sign for west bound traffic on Penrose at Grand. The sign is located approximately eight to ten feet east of the east curb line of Grand. The collision occurred close to this intersection as defendant turned right into Penrose. The left fenders of both vehicles collided. After the impact plaintiff's car was headed west and defendant's station wagon was headed in a northeasterly direction at an angle to the street. The rear of his station wagon extended about one and one-half feet to four feet into Grand. Defendant testified that the overall length of his Chevrolet Station Wagon was eighteen feet, six inches and was six feet, six inches in width. Plaintiff's witnesses testified that her Chevrolet Sedan was seventeen to eighteen feet in length and six feet in width. Plaintiff's 14 year old son was a passenger in her car and defendant had one passenger in his car. Cars were parked in the east parking lane of Grand, but defendant testified that none were parked within seventy-five to eighty feet immediately south of the south curb of Penrose. Cars were parked on both sides of Penrose. A car was parked at the south curb of Penrose close to Grand, how close to Grand was never stated in the testimony. Plaintiff said a car was parked to her right at the north curb of Penrose before she got to the stop sign. At one place in her testimony she stated a car could have passed between her and the curb on her right. At another point in her testimony she said there was not enough room for another car to pass on her right. However, other witnesses for plaintiff stated that there was room on plaintiff's right for another car to pass between her car and the curb when she was stopped at the stop sign.

Prior to the collision plaintiff had been driving westwardly on Penrose with the center of the street to her left. In her testimony she maintained that she was left or north of the center of Penrose. Her son testified that as she was driving she was either on the center of Penrose "or she was either or a couple, three or four inches on the other side." Plaintiff stopped her car a foot or foot and one-half east of the stop sign for west bound traffic on Penrose. She said she was north of the center of Penrose when she stopped. She had intended crossing Grand to proceed west on Penrose to visit her daughter who lived west of Grand on Penrose. When she stopped her car near the stop sign she could see that the traffic passing in front of her on Grand was unusually heavy and she said she waited about three or four minutes prior to the collision, intending to proceed west across Grand when the busy traffic subsided. She first saw the station wagon of the defendant when she looked south, at which time he was "about three or four houses" away from Penrose. Plaintiff's son said traffic on Grand was heavy and that his mother was stopped a foot or foot and one-half east of the stop sign about three or four minutes. Plaintiff thought defendant intended to turn east on Penrose "by the side of me * * * left side." She said that defendant's car "got right on top" of her and hit the left front fender of her car. She said the impact did not push her car to the side or backwards. A police officer with the Accident and Investigation Department of the St. Louis Police Department and plaintiff's son testified that there was enough room for defendant's car to pass with safety between plaintiff's car and the cars parked on the south curb of Penrose. Both said there were ten to twelve inches "to spare." Defendant said that when he was driving his car he thought he could not drive between plaintiff's car and the cars parked at the south curb of Penrose, but after he got out of his car and looked the "situation over" he thought he could have made it. The police officer said defendant's view of plain-

tiff's car was unobstructed for a distance of fifty or sixty feet south of Penrose on Grand. Plaintiff's son said he could see defendant's station wagon when it was eighty feet south of Penrose and said defendant was then in the lane west of the curb lane. He said defendant's car was going 20 m. p. h. at that point and was going 17 or 18 m. p. h. when it hit his mother's car, which was still in a stopped position. He thought defendant "hit his brakes" when he was seven or eight feet from his mother's car.

Defendant, Moss testified that he was driving north on Grand at 20 m. p. h., that he reduced his speed to 10 m. p. h. as he turned right into Penrose, and that he then saw plaintiff's car thirty or forty feet east on Penrose about one foot over on his side of Penrose. He said he was on the south side of Penrose and that plaintiff's car was traveling at a speed of 20 m. p. h. He further testified that he applied his brakes hard at this point and stopped his vehicle in approximately ten feet but that plaintiff continued west and struck his vehicle while it was stopped. Defendant said he was driving north on Grand Avenue in the lane next to the curb lane. He was familiar with the intersection of Grand and Penrose and knew that Penrose was a narrow street and that it was only wide enough for four cars. He knew where the stop sign was for westbound traffic on Penrose east of Grand. He knew that he was going to make a right turn off of Grand onto Penrose. In his cross-examination he said that he was around seventy feet away from the intersection when he slowed his car at which time he turned on his right turn signal. He said it was at this time that he began to slow his car down to 10 m. p. h. He said that he began turning into Penrose when he had decelerated his car to 10 m. p. h. Thereafter, he gave the following testimony:

"Q. When you were able to decelerate the car to a speed of ten miles an hour where was your car with relation to the south curb of Penrose?

"A. Where was my car? I would say my car was out about, say, the front of it I would say approximately twelve or thirteen feet from the curb—to the right. The front of my car.

"Q. The front of your car was about twelve or thirteen feet from the south curb of Penrose?

"A. When I come in yes sir."

When the defendant was asked what was the shortest distance in which he could stop his station wagon at a speed of 10 m. p. h., after taking into consideration that it required an emergency stop, reaction time and that there was gravel on the street at the time, he said that he could have stopped his car in eight or nine feet "something like that, if you apply your brakes hard." He said his brakes and steering mechanism were in good condition. He said a part of his car was at the center of Penrose when the two cars collided and that he had not completed his turn into Penrose.

 Defendant contends that plaintiff did not make a submissible case under the humanitarian doctrine and therefore the trial court should have directed a verdict for him. Only submissibility is involved in this point raised by defendant. Plaintiff's humanitarian instruction No. 3 submitted defendant's failure to stop the station wagon and to slow it down. Defendant was not entitled to a directed verdict if plaintiff had made a submissible case of either defendant's ability to stop or to slow his car after plaintiff entered a zone of imminent peril (now referred to in MAI as a position of immediate danger). It was not necessary for the trial court to find substantial evidence of defendant's ability to slow down his car if there was substantial evidence of his ability to avoid the collision and injury to plaintiff by stopping the station wagon. Carlson v. St. Louis Public Service Company, Mo., 358 S.W.2d 795, 799. We think the evidence was sufficient to support a finding by the jury

that defendant could have stopped his station wagon in time to have avoided the collision after plaintiff entered a zone of imminent peril.

The error in defendant's contention is that he assumes that plaintiff was not in imminent peril until he reached Penrose Avenue when for the first time he could see and know that plaintiff was on or over the centerline (unmarked) of Penrose, and, therefore, in a position of imminent peril. He says no matter what his speed was at that point it would have been impossible for him to stop and avoid the collision. There are several basic errors in this assumption. One error that threads its way through defendant's brief is that he fails to give plaintiff the benefit of the evidence in her case favorable to her and fails to give her the benefit of his evidence favorable to her and not contradicted by her own testimony. She testified that her car was stopped north of the center of Penrose when her car was struck by defendant's car. She was entitled to the benefit of defendant's testimony as to his speed when he reached Penrose, which was 10 m. p. h., and his testimony that he could stop in eight or nine feet at that speed. Plaintiff gave no testimony as to defendant's speed and the only testimony in her case in this connection was given by her fourteen year old son who testified that defendant's car was going seventeen to eighteen miles per hour at the time of the collision. As we have pointed out she was not bound by the testimony of this witness as to his estimate of the speed of defendant's automobile. Another error in defendant's assumption is that he unduly and improperly restricts the plaintiff's zone of imminent peril as we shall demonstrate later. However, using defendant's assumption that plaintiff was not in a zone of imminent peril until he reached Penrose Avenue we think that thereafter defendant could have stopped his car in time to have avoided the collision.

When defendant reached Penrose plaintiff's car was stopped approximately eleven

feet east of Grand. Using defendant's own testimony that plaintiff was one foot south of the center of Penrose she would then be fourteen feet north of the south curb of Penrose. Assuming that defendant reached Penrose at the immediate southeast curb, which, of course he did not, he would have to travel the hypotenuse of a right triangle, fourteen feet on one side and eleven feet on the other, a distance of almost eighteen feet before coming into contact with plaintiff's car. He was traveling no more than 10 m. p. h. when he reached Penrose, according to his own testimony. He said he could stop in eight or nine feet at this speed. This demonstrates that he could have stopped and avoided the collision under his own unduly limited zone of imminent peril.

However, we think the evidence shows that at the time defendant started to make his turn into Penrose, at which time he had reduced his speed to 10 m. p. h. and was twelve or thirteen feet south of the south curb of Penrose, plaintiff was in a position of peril. At this time and place defendant could have seen plaintiff's car. Her position of imminent peril was created by defendant when he turned out of the line of travel he had been traveling on Grand to a new line of travel, which, if pursued by him without stopping, would take him over the place where plaintiff's car was stopped. He could or should have observed this at the time he started to make his turn into Penrose. Defendant knew the projected path his car would travel. He could have seen that plaintiff would be in this path. This is true whether plaintiff was one foot south of the center of Penrose or completely on her own north side. It was defendant's act in turning his car that exposed plaintiff to the peril from which she could not escape. While plaintiff was sitting in her stopped car defendant traveled at least thirty feet after turning his car. The evidence shows that defendant could have stopped his car and avoided the collision after he started to make his turn. Smith v. Fine, 351 Mo. 1179, 175 S.W.2d

761; Allen v. Kessler, Mo., 64 S.W.2d 630; Cross v. Wears, Mo.App., 67 S.W.2d 517; Majors v. White, Mo.App., 247 S.W. 233.

In the case of Smith v. Fine, supra, the court said (175 S.W.2d l. c. 764):

" * * * The fact that an automobile operator intentionally proceeds on a curve known to himself should not on this issue [duty to stop] distinguish the case from one where an automobile operator proceeds along a straight path known to himself and observable to others. * * *"

Again at l. c. 764 the court said:

" * * * The thought, however, persists that the new path of an automobile is its path for the purposes of the humanitarian doctrine when its operator freely and knowingly changes its apparent path."

In the case of Cross v. Wears, supra, where the facts were similar in many respects to those of the instant case, the court said (67 S.W.2d l. c. 518):

"It cannot be doubted that plaintiff was in peril *at some time.* While she was sitting in a standing automobile the truck traveled a distance of 40 feet. * * * The collision was inevitable because the driver of the truck chose for its path that part of the highway upon which the automobile was standing. In the circumstances the collision itself demonstrates that plaintiff was in peril the instant the truck was turned toward the automobile in which she was sitting. Majors v. White (Mo.App.) 247 S.W. loc. cit. 234."

We think a submissible case was made for the jury in the instant case.

Plaintiff contends that the trial court erred in sustaining defendant's motion for new trial because of the alleged errors in plaintiff's instruction No. 3. She contends that the instruction was not erroneous in the respects and upon the grounds specified

by the trial court because there was sufficient evidence to support said instruction. The trial court sustained defendant's motion for a new trial on two grounds. (1) Because the evidence did not support the giving of instruction No. 3 on humanitarian negligence and (2) because said instruction permitted the jury to find that defendant could have avoided the collision by "stopping" his car and "slowing it down" when there was no evidence to support a finding that the collision could have been avoided by defendant "slowing" his automobile.

■ Plaintiff's instruction No. 3 required the jury to find after plaintiff "became and was in a position of imminent peril" that defendant could have prevented the said collision "by stopping the Station Wagon and slowing it down * * *." As will be noted the grounds of humanitarian negligence were submitted in the conjunctive. We said in the case of Hodgins v. Jones, Mo.App., 64 S.W.2d 309, l. c. 312 that:

"* * * It appears to be well settled in this state that, when the grounds of negligence on which an instruction directs a recovery are stated in the conjunctive, and one of the grounds is alone sufficient to warrant a recovery, the instruction is not erroneous merely because one of the grounds is without evidence to support it. * * *"

Further support for this holding can be found in the following cases: Miles v. Gaddy, Mo., 357 S.W.2d 897; Lindquist v. Kansas City Public Service Co., 350 Mo. 905, 169 S.W.2d 366; Bowman v. Standard Oil Co., 350 Mo. 958, 169 S.W.2d 384, 386. However, this holding does not apply where one of the several grounds of negligence, conjunctively submitted, is an improper statement of the law and a positive misdirection. Miles v. Gaddy, supra. We do not believe there was sufficient evidence to support a finding that the collision could have been avoided by defendant "slowing" his automobile. However,

as heretofore found, there was sufficient evidence to support a finding by the jury that the defendant could have avoided the collision by stopping his car. Inasmuch as the humanitarian negligence was submitted in the conjunctive the instruction was not erroneous merely because there was insufficient evidence to support a finding that the collision could have been avoided by defendant "slowing" his automobile. Nor do we find this submission of humanitarian negligence an improper statement of the law or a positive misdirection of the law.

■ Defendant now makes the additional complaint that instruction No. 3 is erroneous because it omits the essential finding of where plaintiff was stopped in order to be in a position of imminent peril. The answer to this is what we said heretofore, that it made no difference whether plaintiff was stopped north or south of the center of Penrose. In either position she came into a position of imminent peril when defendant started to make his turn. Plaintiff's instruction No. 3 was in the conventional form and was sufficient and free of prejudicial error.

■ Defendant next contends that plaintiff's instruction No. 9 on damages is erroneous because (1) she was not the real party in interest as to the automobile, and (2) there was no evidence as to loss of earnings. In answer to the contention that plaintiff was not the real party in interest as to the automobile, we need only state that we think the evidence satisfactorily shows that she owned the automobile at the time of the collision. However, defendant further contends in this connection that her claim for property damage was actually a subrogation claim. He bases this on evidence given by plaintiff that she had been reimbursed for all of her damage, except $50 "deductible." While this might indicate that she had been reimbursed by an insurance company for all of her damage except $50, this does not preclude her from bringing the action to recover the

entire damages. In the case of Hayes v. Jenkins, Mo.App., 337 S.W.2d 259, 262, the court held that payment of property damage by an insurer does not preclude an insured from recovering the entire amount of damage unless the plaintiff has executed an assignment of her cause of action. Steele v. Goosen, Mo., 329 S.W.2d 703. There is no evidence to show that plaintiff had assigned her cause of action.

We think defendant's final complaint, that plaintiff's instruction on damages was erroneous because it allowed a recovery for plaintiff's impairment of ability to work and earn a living, is without merit. It should be pointed out that the instruction did not direct the jury to allow or to assess damages for impairment of ability to work and earn a living but merely told the jury that in determining such damages it may take into consideration such impairment. See Moss v. Mindlin's, Incorporated, Mo., 301 S.W.2d 761, 768, 769; and Hieber v. Thompson, Mo. App., 252 S.W.2d 116, 125. The evidence showed that prior to the accident plaintiff was in good health and two years prior had worked at Sears Roebuck Company as a seamstress in the tailoring department for men's clothing for a period of thirty years. In such work she had done hand sewing and operated a sewing machine. In the period prior to her accident when she was not working she was taking care of her daughter's babies. This was the reason given by her for not working at the time. She indicated she was ready to go back to work, but did not know whether she could do the seamstress work on the sewing machine any more. She said she could not clean her own house, could not do her mopping, that she had to sit down frequently and when she did sit down it was uncomfortable. She had to do her ironing a little bit at a time. She had not been free of pain at any time since the accident. She said the steering wheel of her automobile struck her in the abdomen and that her neck was hurt. The morning after the accident she

could hardly get up because of her neck. She was treated by a doctor. At the time of the trial she said her back still hurt her and that she had difficulty lifting her arms in order to comb her hair. She continues to have pain in the neck when she moves her arms and says the pain seems to start up in her head. Her doctor found tenderness on both sides of the back of her neck and said she had difficulty in bending her neck and her head forward or backward; that the motion was limited to about 50% of full range. He found tenderness to palpation or to pressure over the soft tissues on both sides of the lower portion of her upper back and tenderness over the cartilage portions of the chest, which was that part of the chest next to the abdomen. There was tenderness over the spine and in the soft tissues on both sides of the vertebra. His diagnosis was irritation of the muscles in the back of the neck and on both sides of the lower portion of her back. He found a contusion of the upper part of the abdomen. He prescribed heat treatments, gave her some muscle relaxing drugs, a back support for her to wear and gave her some cervical traction. The conditions he found were painful and said that they disabled her from normal activity in both household duties and gainful employment. It was his opinion that because the pain in plaintiff's head and neck had persisted for a period of two and one-half years, that this condition would be of a permanent nature. We think the evidence was sufficient to submit for the jury's consideration plaintiff's impairment of ability to work and earn a living. The court did not err in giving instruction No. 9 on damages.

Plaintiff made a submissible case under the humanitarian doctrine and we find that the trial court did not err in giving instruction Nos. 3 and 9 and, therefore, the trial court erred in sustaining defendant's motion for a new trial. The order and judgment of the trial court sustaining defendant's motion for a new trial is reversed and the cause is remanded to the trial court with

directions to enter judgment in accordance with the verdict of the jury.

WOLFE, P. J., concurs and J. MORGAN DONELSON, Special Judge, dissents in a separate opinion.

J. MORGAN DONELSON, Special Judge (dissenting).

I respectfully dissent from the opinion of Ruddy, J. I cannot agree that the evidence supports the findings and conclusions therein. Plaintiff failed to make a submissible case under humanitarian negligence on either of the two grounds submitted by her.

Plaintiff's evidence was that she had stopped her car at the intersection of Grand and Penrose. She had been waiting for some minutes during this rush hour period for some heavy traffic to pass on Grand Avenue before she continued across the intersection. She observed defendant's northbound station wagon. Defendant's vehicle continued to the intersection where he made a right turn on Penrose and struck her parked car. Plaintiff's son, Carl, age 14 and a passenger in his mother's car, testified that Defendant Moss was traveling twenty miles per hour north on Grand Avenue. As Moss turned the corner he had a speed of fifteen to twenty miles per hour. He applied his brakes and struck their car parked at the intersection. Plaintiff gave no other evidence as to the speed of defendant's vehicle as he turned the corner or how the accident occurred. Defendant Moss stated that he was driving north on Grand at twenty miles per hour, that he reduced his speed to ten miles per hour as he turned right into Penrose, and that he then saw plaintiff's car thirty feet east on Penrose about one foot over on his side of the avenue. It had a speed of twenty miles per hour. He applied his brakes hard and stopped his vehicle in approximately ten feet, but plaintiff continued west and struck his vehicle while it was stopped. Moss further testified that there was not sufficient room between the parked vehicle on the south side of Penrose and plaintiff's car for him to safely pass, but plaintiff's evidence gave him six to twelve inches or from three to six inches on either side of his vehicle to pass and continue eastward.

In a humanitarian case plaintiff must prove every element of her theory of submission by substantial evidence or by reasonable inferences therefrom. It is equally established that a judgment for plaintiff cannot stand if it is based solely upon speculation, conjecture, and surmise, either with respect to the plaintiff's position of imminent peril, or after notice thereof with respect to defendant's ability, with the means at hand and with safety to himself and others, to have averted the accident and resulting injury. Vietmeier v. Voss, Mo., 246 S.W.2d 785; Quinn v. St. Louis Public Service Co., Mo., 318 S.W.2d 316; Batson v. Ormsbee, Mo.App., 304 S.W.2d 680; Lane v. Wilson, Mo.App., 390 S.W.2d 943.

First, plaintiff contends that defendant could have stopped and averted the accident. Plaintiff's evidence was that defendant at a speed of fifteen to twenty miles per hour turned the corner at the intersection of Grand and Penrose Avenues and he struck her *stopped* car. No evidence was introduced by plaintiff to show the distance within which, moving at a speed of fifteen to twenty miles per hour under these circumstances, the station wagon of defendant could have been stopped. Plaintiff offered no other evidence on these issues. Plaintiff's proof, therefore, does not support her humanitarian submission. She must rely upon defendant's evidence of speed and stopping distances to make her case, if possible. Defendant testified that he was moving at a speed of ten miles per hour when he turned the corner, that plaintiff was approaching him from the east about one foot over on his side of the avenue at a speed of twenty miles per hour, and that he stopped his vehicle before it was struck by

plaintiff. It was further in evidence that with some gravel on the street he did, in fact, stop his vehicle after applying his brakes hard in a distance of ten feet. Plaintiff cannot now disregard her evidence as to speed and recover on the theory that the station wagon was traveling ten miles per hour, and therefore defendant could have stopped short of the collision, Ordinarily the plaintiff is entitled to the benefit of defendant's favorable evidence, if any; but I am equally aware that defendant's evidence can benefit plaintiff *only* if certain qualifications are met. It must not contradict plaintiff's theory of her case and her own evidence. Not only does defendant's evidence contradict plaintiff's evidence on these issues, but also plaintiff's theory of how the accident occurred is contradicted. She therefore is not entitled to the benefit of defendant's evidence. Fenneren v. Smith, Mo., 316 S.W.2d 602; Price v. Nicholson, Mo., 340 S.W.2d 1; Appelhans v. Goldman, Mo., 349 S.W.2d 204.

Next, plaintiff contends that defendant could have "slowed" his vehicle and thus avoided the collision and plaintiff's injury. This theory is not supported by the evidence and cannot be sustained. By her own evidence plaintiff was stopped at the intersection and she was not moving. The "slowing" theory is applicable when both vehicles are moving and plaintiff proves that if defendant had only "slowed or slackened" the speed of his vehicle she could have passed or moved by safely, and there would have been no collision. The majority opinion also agrees that there was not sufficient evidence to support a finding that the collision could have been avoided by defendant "slowing" his automobile, therefore I will not pursue this point further.

Under the evidence neither submission to the jury by plaintiff is supported and the verdict for plaintiff could only be based on speculation, conjecture and surmise; therefore, I would hold that it was proper for the trial court to order a new trial.