Vincent W. KEATING and Janet J. Keating, Plaintiffs-Respondents,

v.

Linda K. JERDE, a Minor, Defendant-Appellant.

No. 25529.

Kansas City Court of Appeals, Missouri.

June 7, 1971.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 4, 1971.

Application to Transfer Denied Dec. 13, 1971.

Edward W. Mullen, Deacy & Deacy, Kansas City, for appellant.

James W. Jeans, Lantz P. Walsh, Martha Sperry Hickman, Kansas City, for plaintiffs-respondents.

JAMES W. BROADDUS, Special Commissioner.

Plaintiffs-respondents brought this action to recover damages in two counts. Count I was the cause of action of Vincent W. Keating for his personal injuries, and Count II was the cause of action of his wife, Janet J. Keating, for loss of her husband's services. At the trial of the cause the jury returned a verdict in favor of plaintiff, Vincent W. Keating against both defendants, James L. Gold and Linda K. Jerde, in the sum of $20,000, and a verdict in favor of plaintiff, Janet J. Keating against both defendants in the sum of $5,000. Both defendants filed motions for new trial, which were overruled by operation of law. Within the 90 days after filing the post-trial motions, however, plaintiffs filed their separate dismissals as to defendant Gold and the court entered a judgment dismissing the cause with prejudice as to said defendant and evidencing partial satisfaction of each judgment by defendant Gold to the extent of one-half thereof. The amount in dispute therefore, as between plaintiff Vincent Keating and appellant Jerde is the sum of $10,000, and between plaintiff Janet Keating and appellant Jerde is the sum of $2,500, and thus this court has jurisdiction of the appeal. Sect. 477.040 V.A.M.S. as amended.

The case arose out of a collision of automobiles operated by plaintiff Vincent W. Keating and defendant James Lynn Gold on July 17, 1967, on U.S. Highway 69, or Vivian Road, approximately 100 feet west of the west edge of County Road AA in Platte County, Missouri. The posted speed limit on Highway 69 was 35 miles per hour. Defendant Gold was operating a Dodge Charger automobile westbound on Highway 69 at a speed which he estimated as from 40 to 50 miles per hour, but which plaintiff estimated at "twice the speed limit or 70 miles per hour."

Approximately 500 feet to the east of the intersection was a hillcrest over which defendant Gold had just come. Defendant Jerde, a 16 year-old girl had come south on County Road AA to the intersection driving a Ford station wagon and accompanied by her father, her cousin and a younger brother. After stopping for a stop sign, according to her testimony, she looked both ways, but because of road signs her view was blocked to the left or east and she therefore pulled closer to the pavement, looked again, could see to the top of the hill, saw nothing coming and proceeded into the intersection making a right turn and traveling west on Highway 69. After getting straightened out, she looked in her mirror and saw defendant Gold's car less than half way down the hill gaining on her rapidly and therefore increased her speed a little; thereafter, when her car was something more than 100 feet west of the intersection she heard Gold's brakes squealing and started for the shoulder of the road in order to get off the highway. About the time she was getting onto the shoulder she heard the collision between the westbound car of defendant Gold and the eastbound Volkswagen bus of plaintiff Keating which, by the undisputed evidence, happened a foot or more south of the center line of Keating's side of the road. Defendant Gold's car did not contact the automobile of appellant Jerde nor did it ever catch up with the Jerde automobile, and the collision between plaintiff Keating and defendant Gold occurred behind and to the east of the Jerde automobile. Defendant Gold testified that he was about 175 feet from the intersection when appellant Jerde pulled onto the highway.

Plaintiff offered the testimony of two young women, Mrs. Swofford and Mrs. Henderson, who were sisters. They were traveling west on Highway 69 and had been passed by Gold. Mrs. Swofford said the Jerde automobile pulled into the intersection when Gold was three-fourths of the way down the hill—approximately 125 feet from the intersection. Mrs. Henderson said that Gold was "very close" to the intersection, or "at the intersection" when the Jerde station wagon pulled onto the highway.

Defendant applied his brakes and left 120 feet of skid marks commencing five to ten feet east of the intersection and leading up to the point of impact, then left another 33 feet of skid marks as his car went around in a semi-circle following the impact. Plaintiff's Volkswagen was knocked into the ditch. Plaintiff was severely injured and taken by ambulance to the hospital.

Prior to the commencement of the trial appellant asked the court to enforce the rule excluding witnesses from the courtroom until such time as they might be called to testify, but no ruling was made on that motion. The minor appellant's father, Mr. Marion J. Jerde, had been appointed guardian ad litem and was named by plaintiff's counsel as a potential witness, having been in his car which his daughter was driving at the time of the accident. At no point did the court announce any ruling on the motion to exclude witnesses nor did the court announce to any prospective witnesses that they were not to remain in the courtroom.

When defendant's counsel called Mr. Marion Jerde as a witness, counsel for defendant Gold objected on the ground that Mr. Jerde, as guardian ad litem, had remained in the courtroom throughout the trial, which objection was joined by the plaintiff and was sustained by the court. Thereafter, an offer of proof was made as to what said witness would testify to, which included certain facts which could not be testified to by any other person which offer of proof was, by the court, denied. Thereupon, appellant moved for a mistrial, which motion was denied, which motion was renewed and again denied.

At the close of all the evidence the court overruled the motions of both defendants for directed verdicts and submitted the cause to the jury as to defendant Gold

solely upon a theory of excessive speed, and as to defendant Jerde upon the theory that she either failed to keep a careful look-out or failed to yield the right-of-way.

Appellant's first contention is that the court erred in overruling her motion for a directed verdict offered at the close of all the evidence for the reason that the testimony of plaintiff-respondent Vincent Keating showed that appellant was not guilty of the negligence charged and plaintiffs were not entitled to rely on testimony of other witnesses in conflict therewith.

Appellant's basis for this contention is a series of cases which hold that if a plaintiff testifies "positively and understandingly" and "clearly and unequivocally" to the "basic facts and circumstances of the case," with no subsequent "correction or modification" that he may not have the benefit of the testimony of other witnesses which is contrary to his own. The recitation of these authorities, however, does not put the issue to rest. Two impediments remain: The necessity of characterizing plaintiffs' testimony as positive, unequivocal and unmodified; and the necessity of circumventing the modifying rule of law that a party will not be bound by a "mere estimate of such things as time, speed or distances."

By piecing together portions of testimony most favorable to her appellant seeks to show that Gold was 500–525 feet from the intersection when appellant pulled out onto the highway. A full review of the evidence indicates to the contrary. Plaintiff never did acknowledge that he saw Gold when he "first came over the hill" as claimed by appellant. He explained " * * * from where you're sitting there looking, it could be this way farther * * * he could have been this side of the actual crest of the hill." Even if plaintiff had seen Gold when he first topped the hill he testified that the distance that separated them at that time was "about three or four hundred feet away," which would put Gold about 100 to 200 feet from the intersection.

And in response to appellant's question: "But in any event when you first saw him top the hill, she was already pulling onto the highway, right?" Plaintiff responded, "She had started to pull up from the stop sign, yes, *which was back some distance*."

■ Throughout plaintiff's interrogation regarding the facts of the accident, the nature of his testimony was clear. When asked if Gold was several hundred feet away at the time he estimated his speed, he responded, "I believe so." He acknowledged as "quite true" that it is "extremely difficult" to make an "accurate estimate" of a car's speed. And again, when confronted with the accuracy of his testimony concerning distances he stated: "I would have to estimate again." Such estimates and opinions concerning speeds and distances are not binding on the plaintiff and he may rely on more favorable testimony adduced from others. Vaccaro v. Moss, Mo.App., 410 S.W.2d 329, 331; Meier v. Moreland, Mo.Sup., 406 S.W.2d 97, 101. The contention is without merit.

■ Appellant next contends that the trial court erred in excluding the testimony of her father and guardian ad litem who was offered as a witness on her behalf on the ground that appellant had invoked the rule excluding witnesss and that appellant's guardian ad litem should therefore have remained outside the courtroom until called to testify, when said guardian ad litem was possessed of facts and knowledge important to the defense of the minor defendant, and his testimony was not redundant or cumulative and appellant could produce no other witness who could testify to all of the same facts.

At the time of the accident appellant was 16 years of age and at the time of the trial she was 17 years of age. Her father who was a passenger in his own car which appellant was driving at the time of the accident, was appointed as her guardian ad litem. The Supreme Court has described the duties and function of a guardian ad

litem in Tracy v. Martin, 363 Mo. 108, 249 S.W.2d 321:

"While it has been said that there is little, if any, difference between the functions and powers of a next friend or *procheim ami* and a guardian ad litem, (citation omitted) the position of the latter as a party litigant seems to be the more unique. He represents an interest brought into court involuntarily, and, in the case at bar, one essential to the validity of a binding adjudication. It is the duty of the guardian ad litem to defend the suit. He cannot admit or waive anything which goes to sustain the claim of the adverse party. Nor is the appointment a bare technicality, and it is something more than a mere technical defense that is required of the guardian."

In Spotts v. Spotts, 331 Mo. 917, 931, 55 S.W.2d 977, 983, the Supreme Court said:

"This court has clearly stated that the appointment of a guardian ad litem for an infant defendant is not a bare technicality and that the office does not involve only perfunctory or shadowy duties, saying: 'This guardian is to do for him what with riper judgment he would do for himself. He is to appear for him in his proper person, employ competent attorneys and counsel to prepare and plead his cause. He is to collect testimony, summons witnesses, and at the trial to afford such aid to his counsel as may be necessary in unexpected difficulties. It is only by exercising that attention and vigilance in the cause of the minor, which he would exert in his own, that he fairly discharges his duty.'"

To like effect are Quincy v. Quincy, 430 S.W.2d 638 (Mo.App.), and M. F. A. Mutual Ins. Co. v. Alexander, 361 S.W.2d 171 (Mo.App.), where the foregoing language is quoted with approval at page 182:

"The minor appellant sought the appointment of her father, a person with some knowledge of the case, as her guradian ad litem and upon his consent to so act, he was appointed. If, as held by the Supreme Court, the guardian 'is to do for his ward what with riper judgment he would do for himself * * * appear for him in proper person * * * and at the trial to afford such aid to his counsel as may be necessary * * *' it would seem that his attendance during the trial would be essential to the proper performance of his function. Certainly, where the guardian ad litem has actual personal knowledge of the facts, he should be in a much better position to aid his ward and counsel in the trial of the case. If he is to do for his ward what he would do for himself, clearly this would include attending throughout the trial."

The offered testimony of the guardian was that he was riding in the right front seat of his own automobile which his daughter was driving; that his daughter stopped for the stop sign before entering the intersection, and that before the automobile went onto the highway he looked to the east and up the hill for westbound traffic, could see all the way to the top of the hill and that there was no westbound traffic either at the top of the hill or coming down the hill, whereupon he told his daughter: "It's Okay to go ahead"; that she then proceeded onto the pavement and made a right turn to go west on the highway. He would have also testified that after they were on the highway proceeding west he heard the brakes from defendant Gold's automobile and that they were then "not quite to the post * * * sitting at the west edge of the trailer court"; that he told her to get off the road and that when he heard the brakes on the Gold automobile he had turned and looked at it and that the Gold automobile never got within two or three car lengths of the rear of appellant's automobile; that appellant's automobile was about even with the high line pole at the time of the crash and was just about turning onto the shoulder; that when he looked back and saw Mr. Gold's car he did not see any other automobile coming down the hill from behind it. Obviously, this proffered testimony was material in several respects

on points as to which there was considerable conflicting evidence.

While we have been cited to no Missouri case regarding the applicability of the rule excluding witnesses to the next friend or guardian ad litem, the question was ruled on in Indiana long ago in the case of Cottrell v. Cottrell, 81 Ind. 87 (1881) where the court said:

"John Dayton was the guardian of one of the minor appellants, and as such was in attendance in court. A motion was made to separate witnesses, and the court excluded Dayton from the courtroom because he was a witness. This ruling was erroneous. In LaRue v. Russell, 26 Ind. 386, It was said of the exclusion of a party: 'This proceeding is probably without a precedent. The right of a party litigant to be present during the trial of his cause, that he may be heard in his own behalf, has been so long accorded by universal custom, and is so obviously necessary for the security of private rights, that the refusal to entertain the cause at all would scarcely be a greater error than the denial of this privilege. Besides, it is secured by plain and positive statute.'

*"The fact that the party acts in a representative capacity does not make any difference. The guardian is bound to maintain the interests of his ward quite as earnestly and carefully as if they were his own, and his presence in court is as important as if the case were against him individually"*. (Emphasis supplied.)

Likewise in Miller v. Harpest, 39 Ohio App. 184, 177 N.E. 233 (1930) the Ohio Court of Appeals held that the exclusion from the courtroom of the next friend during the trial of an action brought by minor plaintiff on the ground of an order of separation of witnesses constituted error, the court saying (at page 234):

"We are clear, therefore, that the next friend in this case had the right to be present during the trial, and that his exclusion from the courtroom during the progress of the trial was error. If it was error to render a judgment without an answer from the guardian ad litem, we cannot conceive of the trial proceeding without the next friend being present."

The rule announced in those two decisions is sound. We rule the contention in favor of appellant.

Appellant makes additional assignments of error. However, these need not be discussed. The matter to which they relate will not likely arise upon a retrial.

For the error above noted, the judgment should be reversed and the cause remanded. Your Special Commissioner so recommends.

PER CURIAM.

The foregoing opinion by JAMES W. BROADDUS, Special Commissioner, is hereby adopted as the opinion of the Court and the judgment is reversed and the cause remanded. All concur.