Lloyd Eugene MILES, Respondent,

v.

Sammy Herbert GADDY and Dan Newton, d/b/a Newton Distributing Company, Appellants.

No. 48466.

Supreme Court of Missouri,

En Banc.

June 11, 1962.

Orville C. Winchell, Lebanon, Corinne Richardson and Hullverson, Richardson & Hullverson, St. Louis, of counsel, for appellants.

William E. Gladden, Houston, for respondent.

STORCKMAN, Judge.

This is a suit for personal injuries and property damage resulting from the collision of two motor vehicles on Missouri Highway 17 at the north end of the bridge over the Big Piney River about two and one-half miles north of Houston, Texas County, Missouri. The jury returned a verdict against both defendants in the sum of $20,845.47 from which the plaintiff voluntarily remitted $595.47 and judgment was entered for $20,250. The defendants' motion for a new trial was overruled and they have appealed. The defendants contend that the judgment should be reversed and the cause remanded because of errors in the plaintiff's verdict-directing instruction and his damage instruction, and that the verdict is excessive and should not be permitted to stand for more than $10,500.

The plaintiff, 37 years of age, lived on his 80-acre farm five miles north of Houston and had been working as a carpenter for about eight years. The defendant Newton, doing business as the Newton Distributing Company, owned and operated a soft-drink bottling and distributing business out of Rolla. The defendant Gaddy, 20 years of age, worked for Newton Distributing Company in the plant and also drove a delivery truck. On September 28, 1958, the plaintiff had been doing carpenter work in Hous-

ton. Shortly after noon he was driving his 1949 Chevrolet pickup truck north on Highway 17. The day was clear and the sun was shining. The blacktop pavement was dry and at the place in question was about 20 feet wide with a center line marker. As the plaintiff drove onto the Piney River bridge, he saw the Newton delivery truck, operated by defendant Gaddy, coming south about 400 yards away. The bridge is about 360 feet long. The road north of the bridge runs straight and level for about 100 yards before it curves upward to the northwest over a hill.

The plaintiff, driving in the northbound lane, about two feet from the center line, was just leaving the bridge when the Newton truck swerved from the southbound lane into the path of plaintiff's vehicle and they collided. The main points of impact were the right front portions of each vehicle. The plaintiff's truck was thrown around and came to rest headed east with its front wheels on the east shoulder and its right side against the iron superstructure of the bridge. The Newton truck ran off the east side of the pavement, down a 10-foot embankment and stopped about 40 feet from the highway. Except for salvage value, the plaintiff's truck was a total loss. The plaintiff's principal injuries were a gash on his forehead from the broken windshield, a cut on his wrist and a fracture of the kneecap or patella of his right knee which developed traumatic arthritis and had to be removed surgically.

It is not denied that the Newton truck came across the center line and collided with plaintiff's truck in the northbound traffic lane. The essential controversy is what caused the Newton truck to so behave. The plaintiff testified that he was driving his truck at 30 to 35 miles an hour and at all times remained on his side of the road; that the soda pop truck approached without swerving or other unusual behavior and seemed to be traveling at a speed of about 35 to 45 miles per hour; that the Newton truck seemed to slow up when it was 25 to 30 feet away, and when it was about 20

feet away it "swayed" across in front of the plaintiff at a 45-degree angle; and that the defendants' truck came across without warning and so suddenly that the plaintiff had no time to apply his brakes or swerve. The point of contact was five or six feet inside the northbound lane. No skid or black smudge marks were found on the highway.

The defendant Gaddy testified that he was driving a 1951 Chevrolet truck and had had no difficulty with it before this occurrence; that as he came down the hill he was traveling at 40 miles an hour and slowed to about 35 miles an hour as he approached the plaintiff; that when he was about 40 feet from the bridge "something must have broken loose"; that the steering wheel slipped out of his hand and made a sharp turn to the left; and that he pulled but he could not hold it. In his own words: "It made a jerk to the left and I couldn't hold the wheel. I don't think any man in here could and I couldn't do anything with it." Defendant Gaddy denied telling the plaintiff that it was all his fault. He said he might have cursed the truck after the accident, but he didn't think so. He thought that he had made a statement to the highway patrolman that he had put on his brakes and went to the left and down the embankment trying to miss the plaintiff. Additional evidence will be discussed during the course of the opinion.

The defendants' first contention is that the court erred in giving plaintiff's verdict-directing instruction. This instruction, No. 1, undertook to submit a failure to drive the defendants' truck on the right half of the roadway (§ 304.015, subd. 2, RSMo 1959, V.A.M.S.) and a failure to keep the truck under control. The material portion of the instruction with the parts italicised about which the defendants complain reads as follows: "If you further find and believe from the evidence that as said motor trucks approached and met the southbound truck operated by Sammy Herbert Gaddy *was caused and permitted to swerve* out of its right hand lane into the left hand lane

and into collision with the northbound truck operated by Lloyd Eugene Miles, and if you further find and believe from the evidence that in *so operating said truck* the Defendant Sammy Herbert Gaddy then and there failed *to operate* the said truck on the right half of the roadway, and *that he failed to keep the truck which he was driving under control under the circumstances then and there existing,* and if you further find and believe that *in so operating the said truck* the Defendant Sammy Herbert Gaddy failed to exercise the highest degree of care and was negligent and that such negligence, if any, directly caused the collision mentioned in evidence, and if you further find that as a direct result of said collision Lloyd Eugene Miles sustained injuries and damage, then your verdict shall be in favor of the Plaintiff Lloyd Eugene Miles and against Defendant Sammy Herbert Gaddy and Defendant Dan Newton, doing business as Newton Distributing Company".

For at least thirty years the decisions of this court, both en banc and in division, have criticised and condemned instructions for submitting the failure to *control* a motor vehicle as a ground of specific negligence. Nevertheless, the use of this form of submission persists and seems to be increasing. In State ex rel. Burger v. Trimble, 331 Mo. 748, 55 S.W.2d 422, this court en banc reviewed on certiorari a decision of the Kansas City Court of Appeals, Burgher v. Niedorp, 50 S.W.2d 174, 175, which held a submission "that defendant carelessly and negligently failed to exercise the highest degree of care in the operation of said automobile to keep same under proper control and management," to be a submission of general negligence, to constitute a roving commission and to be reversibly erroneous. 50 S.W.2d, l. c. 176. The supreme court held the opinion of the Court of Appeals not to be in conflict with any decision of this court, quashed its writ and in conclusion stated, 55 S.W.2d, 1. c. 424: "In the instant case, the instruction authorized a verdict on specific negligence, and

also authorized and invited the jury under the charge of general negligence 'to speculate in reference to what defendant did or failed to do in the management of the car.'" In Annin v. Jackson, 340 Mo. 331, 100 S.W. 2d 872, 876 [6], the court held a similar submission of failure to control to be reversibly erroneous and characterized it in this fashion: "It may be possible that situations may arise where the terms control, or management, embrace but a single matter of fact and may of themselves be fully descriptive of the same. But not so in the instant case. The term 'control' as used in the pleading and in the instruction was used— ostensibly so to the jury—in a collective sense as embracing all the various factual elements and circumstances brought out in the evidence. The appellant complains of this, and properly so; * * *."

These and later decisions have established that failure to control the operation of a motor vehicle is a charge of general negligence and that an instruction which submits it is confusing and constitutes a roving commission. Rosenfeld v. Peters, Mo., 327 S.W.2d 264, 269 [7, 8]; Highfill v. Brown, Mo., 340 S.W.2d 656, 663 [9]; Myers v. Buchanan, Mo., 333 S.W.2d 18, 21 [2]; McCarthy v. Sebben, Mo., 331 S.W.2d 601, 606–607; Thompson v. Gipson, Mo., 277 S.W.2d 527, 531 [5]; Kitchen v. Wilson, Mo., 335 S.W.2d 38, 45 [11]; Kimmich v. Berry, Mo., 319 S.W.2d 546, 548; Vogelgesang v. Waelder, Mo.App., 238 S.W.2d 849, 856 [8]. See also Coit v. Bentz, Mo., 348 S.W.2d 941, 945 [5]. As applied to the operation of a motor vehicle, loss or lack of control is usually the result of some antecedent act or omission which is the essential fact that should be hypothesized in the verdict-directing instruction. Myers v. Buchanan, Mo., 333 S.W.2d 18, 21.

Even though an allegation of general negligence in the pleadings is unchallenged, an instruction must submit the specific acts of negligence shown by the evidence unless the case is one where the doctrine of res ipsa loquitur applies. Annin v.

Jackson, 340 Mo. 331, 100 S.W.2d 872, 875 [1]; Watts v. Moussette, 337 Mo. 533, 85 S.W.2d 487, 491 [6]; Allen v. Missouri Pac. Ry. Co., Mo., 294 S.W. 80, 87.

In Thompson v. Gipson, Mo., 277 S.W.2d 527, 531 [6], the giving of a "control" instruction in conjunction with one on specific negligence in the same case was held to be error, the court stating: "Unquestionably, Instruction No. 2, which as stated, submitted defendant's negligent failure 'to properly control and operate [her] car at said time and place', is a mere hypothesization of general negligence. See State ex rel. Burger v. Trimble, supra. It specifies no act or omission of defendant, but leaves to the jury the province of determining defendant's negligence by whatever act done or omitted to be done that, in its imagination, it may conceive. On the other hand, plaintiff's Instruction No. 4 hypothesizes specific negligence of defendant in failing to stop, swerve to the left or sound a warning. We hold that the court erred in giving Instruction No. 2 in conjunction with Instruction No. 4."

■ In avoidance of the consequences of the error, the plaintiff resorts to the rule that where acts of negligence are submitted in the conjunctive and there is evidence to support one, but not the other, the error will not be considered prejudicial on the theory that the jury must have found for the plaintiff on both grounds and the one not supported was therefore unnecessary. But this rule of harmless error does not apply where one of the several grounds of negligence conjunctively submitted is an improper statement of the law and a positive misdirection. Berry v. Harmon, Mo., 329 S.W.2d 784, 793 [13]; Bowman v. Heffron, Mo., 318 S.W.2d 269, 275 [9]; Fitzpatrick v. St. Louis-San Franciso Ry. Co., Mo., 300 S.W.2d 490, 498 [11]. As shown by the numerous cases cited, the submission in these circumstances of failure to control the motor vehicle as a hypothesis of negligence is not a correct statement of either statutory or case law and

its inclusion renders the instruction prejudicially erroneous.

Since the cause must be remanded for a new trial, it is unnecessary to decide other questions presented; but some observations with respect to other alleged defects in the instructions may be helpful. The defendants further contend that plaintiff's evidence tended to corroborate defendant Gaddy's testimony that the truck veered to its left "because of a sudden mechanical failure" and that plaintiff's instruction therefore injected a false issue that Gaddy operated the truck so as to cause it to swerve when the real issue was whether Gaddy was guilty of some antecedent negligence that caused it to so behave and that the instruction assumed that Gaddy operated the truck across the center line thereby ignoring "the possibility of an accidental or nonnegligent mechanical failure as the proximate cause and bringing this Instruction into conflict with defendants' Instruction No. A."

We do not view the evidence as having the conclusive effect which the defendants ascribe to it. In addition to describing the conceded fact that the Newton truck came across the center line and into collision with his truck, in plaintiff's case it was proved that Gaddy admitted that the truck veered across the line when he applied the brakes as he approached the plaintiff and that Gaddy cursed the "old truck" and said he was afraid it would kill somebody. Gaddy testified that he had had no previous trouble with his truck and his only explanation of the truck's movement was that "something must have broken loose"; that the steering wheel slipped out of his hand, he could not hold the wheel and he did not think "any man in here" could and that the truck turned sharply to his left. Gaddy's testimony was certainly not definitive and no other evidence specified the particular in which the mechanism of the truck failed. For all that appears the cause was vis major. The plaintiff did not endorse Gaddy's explanation and the jury was not bound to

accept it. Proof of Gaddy's statements after the accident should not deprive the plaintiff of his right to rely upon a violation by Gaddy of his statutory duty to drive the truck on the right half of the roadway.

 Section 304.015, subd. 2, RSMo 1959, V.A.M.S., provides that upon all public roads or highways of sufficient width a vehicle shall be driven upon the right half of the roadway with these exceptions: (1) when overtaking and passing another vehicle, (2) when a vehicle is making a lawful left turn, (3) when the right half is closed to traffic because of construction or repair, and (4) upon a roadway designated for one-way traffic. Laws 1953, p. 587, § 304.020. Under similar statutes, the cases have also recognized "excuses" or "excusable violations" which appear to be of a sort that could not be avoided in the exercise of the highest degree of care as imposed by § 304.010 upon all operations of a motor vehicle. In this category are sudden and unexpected brake failure, blowout of a tire and non-negligent skid. See for example, Beezley v. Spiva, Mo., 313 S.W.2d 691, 695 [5]; Evans v. Columbo, Mo., 319 S.W.2d 549, 552 [3]; and Kitchen v. Pratt, Mo. App., 324 S.W.2d 144, 147 [1], and related case, Mo.App., 324 S.W.2d 778.

 The plaintiff's evidence established that defendant Gaddy was the operator of the Newton truck and did not establish exculpatory circumstances. In case of a statutory violation, it is generally sufficient to couch the verdict-directing instruction substantially in the language of the statute. Creech v. Blackwell, Mo., 318 S.W.2d 342, 348–350 [5]; Hanson v. Tucker, Mo., 303 S.W.2d 126, 128 [1]; Cuddy v. Schenewark, Mo., 231 S.W.2d 689, 690–691 [3]; Harris v. Hughes, Mo.App., 266 S.W.2d 763, 770 [13]; Arky v. Kessels, Mo.App., 262 S.W. 2d 357, 358–359 [3]; Smyth v. Hertz Driv-Ur-Self Stations, Mo.App., 93 S.W.2d 56, 58–59 [1, 2]; King v. Friederich, Mo.App., 43 S.W.2d 843, 844 [2]. The situation is different where the language of the statute is such as to require construction. Gaffner

v. Alexander, Mo., 331 S.W.2d 622, 626 [2]. Defendants' Instruction A followed in general Gaddy's explanation of the occurrence; that is, that the truck veered suddenly and unexpectedly to the left, that Gaddy had no control over its operation and was not negligent. In view of the general nature of the defendants' evidence and submission, they are in no position to complain of the plaintiff's instruction submitting negligence based on § 304.015, subd. 2.

The defendants' objections to the plaintiff's damage instruction are such that they can be avoided on another trial.

The judgment is reversed and the cause remanded.

The foregoing opinion by STORCK-MAN, J., is adopted as the opinion of the Court En Banc.

All Judges concur.