Willis C. JONES and Betty Jones, Appellants,

v.

GARDEN PARK HOMES CORPORATION, a corporation, Fischer & Frichtel, Inc., a corporation, Clement McCarthy and Violet McCarthy, Respondents.

No. 51071.

Supreme Court of Missouri, Division No. 2.

Sept. 13, 1965.

Biggs, Hensley, Hughes, Curtis & Biggs, Ward Fickie, St. Louis, for appellants.

Carroll J. Donohue, Shulamith Simon, Husch, Eppenberger, Donohue, Elson & Cornfeld, St. Louis, for respondents, Garden Park Homes Corp. and Fischer & Frichtel, Inc.

Maurice L. Stewart, St. Louis, for respondents McCarthy.

STOCKARD, Commissioner.

Plaintiffs have appealed from the judgment of the trial court dismissing their petition at the close of their evidence. By Count I they sought actual and punitive damages in the amount of $25,000, and by Count II they sought a declaratory judgment that title to certain land owned by them was not burdened with an easement.

Defendants offered no evidence, and the record does not indicate whether they had evidence to offer in the event their motions to dismiss had not been sustained. This is a court tried case, and pursuant to Civil Rule 73.01, V.A.M.R., we are to review the case upon both the law and the evidence as in suits of an equitable nature. In view of the record before us we cannot review the case on its merits. We can do no more than determine whether the trial court correctly entered judgment for defendants on both counts of the petition at the end of plaintiffs' evidence.

On May 12, 1961, plaintiffs (designated as "purchaser") and Fischer & Frichtel, Inc. (sales agent for Garden Park Homes Corp., the owner of the land) entered into a "Sales Contract" wherein it is stated that "real property situated in the County of St. Louis, State of Missouri, being described as Lot #21, * * * in Bellecoeur Plat 3 Subdivision," together with improvements thereon to be erected, "this day is sold to purchaser." It was provided in the contract that "Purchaser authorizes Seller [presumably Garden Park Homes Corp., the owner, although its name appears nowhere in the agreement] to order title search and certificate, stake out and spot survey and pay out required loan commitment fees, if any, for purchaser's account and at purchaser's expense." Title was to pass "when sale is closed" under the "usual closing practices of the Metropolitan St. Louis Real Estate Board," which were set out at the bottom of the instrument and which provided, among other things, that "Seller shall furnish a general warranty deed, subject to deed restrictions and zoning ordinances, easements, general taxes payable in current year, * * *."

On July 29, 1961, with no actual notice to plaintiffs, Garden Park Homes Corp. conveyed to Clement and Violet McCarthy, owners of land adjacent to said Lot 21 on the west, "an easement for a private roadway 50 feet wide," which included the west fifty feet of Lot 21, and it was provided that the easement should "serve exclusively the McCarthys, their heirs, * *, and no electric or telephone poles shall be erected above ground on the westerly side of said easement [the west side of Lot 21] without the McCarthys' consent." It was further provided that "In addition McCarthys and assigns shall have the privilege of placing a row of trees along the easterly side of said easement [fifty feet inside of Lot 21] opposite McCarthys present easterly line." Garden Park Homes Corp. also agreed, as part of the consideration, to surface and pave a portion of the easement area. This easement was recorded on August 9, 1961.

On September 8, 1961, Garden Park Homes Corp. conveyed to plaintiffs by general warranty deed "Lot 21 of Bellecoeur Plat 3, according to the plat thereof recorded in Plat Book 99 page 5 of the St. Louis County Recorder's Office, subject to building line, easements, restrictions and conditions of record."

The plat referred to in the deed was labeled "Bellecoeur Plat 3," and it was filed in the office of the Recorder of St. Louis County on April 27, 1961. On the plat there are provisions whereby Garden Park Homes Corp. "dedicated to the County of St. Louis, Missouri for public utility use, sewer and drainage purposes" the "easements shown on this plat, unless otherwise noted," and whereby "The street designated on this plat as Chasselle Lane" was "dedicated to public use forever." Lot 21 is shown to be 271 feet in length east and west, and 161 feet in width facing on Chasselle Lane. The plat contains a broken line across the west end of Lots 21, 22, 23 and

part of Lot 20 with the identification of "15′ W. Easem't." Broken lines on the plat indicate a 15-foot easement, with 7½ feet on each of Lots 21 and 22, extending eastward 120 feet from the west boundary of the two lots. The identification on the plat is "7½′ W. Easements." The purpose of these easements is not indicated on the plat, but apparently they are for public utility use, sewer and drainage purposes. On the plat there is another broken line extending across the west portion of Lots 21, 22, 23 and part of Lot 20, and it is identified as "50′ wide Roadway Easement." This fifty feet includes the fifteen foot easement across the west end·of the lots.

On the same day the plat was filed, there was also recorded what was captioned "Bellecoeur Plat #3 Restriction Indenture." This was executed by Garden Park Homes Corp. by Edward F. Fischer, president. It was therein stated that Garden Park Homes Corp. was the owner of all the lots in Bellecoeur Plat #3, a subdivision, and it was then provided that the lots "shall be subject to the easements, conditions, restrictions, reservations and limitations as hereinafter set forth, to-wit: * * *. (2) Easements: All easements as shown on said plat shall be and the same are hereby set aside and reserved for wires, poles, water and gas mains, sewers and other subdivision utilities, essentials and facilities." By paragraph (7) a board of trustees was appointed to consist of three individuals, and it was stated that the board "shall have the following rights and authority to wit: * * * (e) to exercise such control over the easements shown on the record plat except those easements which are now dedicated to public bodies and agencies as is necessary to maintain, supervise, and insure the proper use of said easements by the necessary public utilities, including the right (to themselves and to others to whom they may grant permission) to construct, operate and maintain on, under and over said easements and streets, sewers, pipes, wires, and other facilities and public utilities for service to the lots shown on said

plat. * * * (h) Abandon an easement or portion thereof * * * when all the Trustees unanimously agree that there is no further use for same." In paragraph (14) it was provided, after reciting various considerations, that "Garden Park Homes Corp., hereby grants, bargains, and sells, conveys, and confirms unto the said Trustees as joint tenants and not as tenants in common, and to the successor and successors of them as Trustees of Bellecoeur Plat #3, the following: Easements in, over, upon, and across such portions of said land as may now or hereinafter be designated as streets, roads, driveways, and paths as follows: The rights, benefits and advantages of having ingress and egress from and to, over, along and across such streets, roads, driveways and paths, and appropriately beautifying and maintaining the same; * * *."

Mr. Willis C. Jones, who with his wife were the purchasers of Lot 21 and are the plaintiffs in this action, testified that when he looked at Lot 21 with the salesman several weeks before he signed the "Sales Contract" he saw a 10 or 12-foot graveled road across the rear of Lot 21, and he was told by the salesman that it was "merely to provide egress and so forth into the McCarthy home." He was not shown the recorded plat, no one told him a fifty-foot easement for roadway existed, and he was never told about the easement which was executed on July 29, 1961. The certificate of title, dated September 11, 1961, issued in plaintiffs' names but which apparently was ordered and obtained by the "Seller" pursuant to the provisions of the "Sales Contract," stated that "the fee simple title" to "Lot 21 of Bellecoeur, Plat 3" was vested in plaintiffs subject to a deed of trust, general taxes for 1961, "building line, conditions, restrictions and rights and powers of trustees, according to the plat of said Subdivision * * * and [two] instruments" recorded in the designated books, one of which was the instrument filed at the same time as the plat. No specific

mention was made of a fifty foot easement for roadway purposes.

By Count I plaintiffs seek damages from defendants for fraudulently placing a fifty foot roadway easement on Lot 21 between the execution of the sales contract and the delivery of the deed. We shall consider first whether plaintiffs' evidence, when accepted as true and given all favorable permissible inferences, would authorize a recovery. In our consideration we do not necessarily restrict ourselves to the precise theory pleaded because the pleadings may be presumed to have been amended to conform to the proof.

On May 21, 1961, Garden Park Homes Corp. received part payment for Lot 21 in the amount of $2,000 as earnest money, and "this day * * * sold" it to plaintiffs. The sale of the lot was subject to valid restrictions and easements then of record, and also subject to any lien for taxes. From that time until the transfer of legal title plaintiffs were the equitable owners, and Garden Park Homes Corp. held legal title for them as trustee. State ex rel. City of St. Louis v. Baumann, 348 Mo. 164, 153 S.W.2d 31; Hernandez v. Prieto, 349 Mo. 658, 162 S.W.2d 829; Branch v. Lee, Mo., 159 S.W.2d 677; Levine v. Humphreys, 297 Mo. 555, 249 S.W. 395; Savings Trust Co. of St. Louis v. Skain, 345 Mo. 46, 131 S.W.2d 566; Kansas City v. Kansas City Terminal Ry. Co., 324 Mo. 461, 23 S.W.2d 1006; 91 C.J.S. Vendor & Purchaser § 106b; 55 Am.Jur. Vendor and Purchaser § 356. Any subsequent conveyance of any portion of the title by Garden Park Homes Corp. to a third party without plaintiffs' consent was wrongful as to plaintiffs, and constituted a violation of the contract to sell and a violation of the trust. In such situation various remedies are available. As stated in 92 C.J.S. Vendor & Purchaser § 299, the original purchaser may treat the contract as rescinded and recover the purchase money, he may sue to recover damages for the breach of the contract, and among other available remedies, "where the conveyance was made with intent to defraud him is an action to recover damages for the tort." See also the complete discussion of the available remedies in such situation in 55 Am.Jur. Vendor and Purchaser §§ 412–416, and particularly § 413 where it is stated that "An action ex delicto has been held to be an appropriate form of remedy in favor of a purchaser of real estate against his vendor, where the latter subsequently sells the property to a bona fide purchaser who acquires title to the property free and clear of the interest of the original purchaser." Recognition of an action in tort in such situation also appears in Restatement Torts § 871.

We shall first assume, as plaintiffs contend, that the dotted line and identification on the plat did not create an easement for roadway purposes. In that event, when Garden Park Homes Corp. sold Lot 21 to plaintiffs on May 12, 1961, it agreed that at the designated time it would transfer the fee of Lot 21 to the plaintiffs unencumbered by a roadway easement, and that in the meantime it would hold such title in trust for the benefit of plaintiffs. Notwithstanding its agreement, and in violation of its trust, on July 29, 1961, with no actual notice to plaintiffs then or later when legal title was transferred, it purported to convey for value a portion of the title held by it to a third party. In so doing it violated its contract, and its wrongful conduct constituted a tortious act to plaintiffs' damage. In this factual situation, the trial court improperly entered judgment for defendants on Count I of the petition at the close of plaintiffs' evidence.

We shall next assume, as defendants apparently contend, but this is not entirely clear, that by the dotted line on the plat and the identification thereon, a fifty foot roadway easement was created. We say the contention is not clear because defendants do not indicate whether such easement was in the public generally, whether it was reserved to Garden Park Homes

Corp. for its exclusive use, or whether it was for the benefit of certain persons, or appurtenant to some other land. Neither do they indicate whether ownership of the easement was or was not in the trustees named in the restriction indenture. However, regardless of these unanswered questions, whatever the easement was which was created, it was no more than a fifty foot easement across the west end of Lot 21 for roadway purposes. It had nothing to do with the location of electric and telephone poles or the planting of a row of trees, and we find no basis for concluding that it was for the exclusive use of the McCarthys as a private roadway, nor that it should be paved. Therefore, if an easement was created by the plat, Garden Park Homes Corp. agreed on May 21, 1961, to convey to plaintiffs the fee of Lot 21 subject to that easement, but plaintiffs did not agree that they should receive the fee subject to a greater burden. Notwithstanding, on July 29, Garden Park Homes Corp. in violation of the contract and its trust, purported to convey to the McCarthys "an easement for a private roadway" over the precise area of the easement created by the plat and stated that it should "serve exclusively the McCarthys." It also purported to convey away the right of plaintiffs to have the west fifteen feet of Lot 21 used for "electric or telephone poles," and it purported to grant to third parties the right to place a row of trees fifty feet inside of Lot 21. In this manner, Garden Park Homes Corp. purported to convey to the McCarthys an interest substantially in excess of the burden of the roadway easement. If a roadway easement was created by the recorded plat, we have difficulty in determining on what theory Garden Park Homes Corp. had title to it so that it could disturb it in any manner. But, in any event, its conveyance to the McCarthys was not limited to the easement for roadway purposes created by the recorded plat. It conveyed away a substantial portion of the title it had contracted to convey to plaintiffs, and its acts were tortious as to plaintiffs.

■ For two reasons we expressly do not rule whether or not some interest (in someone or the public generally) in the form of a roadway easement was created by the recorded plat. First, the only issue now before us for decision is whether judgment should have been entered for defendants at the end of plaintiffs' evidence, and we have determined that it should not. Second, defendants' evidence is not before us. This demonstrates why in most court tried cases a full and complete review on appeal should not be prevented by hearing only the plaintiffs' evidence.

■ We turn now to Count II of the petition, which is an action for a declaratory judgment in the nature of a suit to quiet title. The judgment of the trial court was that "this cause be and is hereby dismissed." This was erroneous. This court has held that when a party by proper action seeks to set up title in himself he " 'is entitled to an adjudication of his existing title, and if he have no title the court should so adjudge or decree.' " Evans v. Brussel, Mo., 300 S.W.2d 442. See also the cases there cited, and particularly Kingston v. St. Louis Union Trust Co., 348 Mo. 448, 154 S.W.2d 39, and Pitts v. Pitts, Mo., 388 S.W.2d 337.

■ There is another reason why we reverse the judgment as to Count II in this case on the record before us. Plaintiffs contend that they own Lot 21 free and clear of an easement for roadway purposes. The McCarthys rely, among other defenses, on the conveyance to them on July 29, 1961 from Garden Park Homes Corp. That conveyance purports to provide that the west fifteen feet of Lot 21 may not be used for electric and telephone poles without the consent of the McCarthys, but on the plat it is provided that "easements shown on this plat, unless otherwise noted" are "dedicated to the County of St. Louis for public utility use * * *." St. Louis County did not join in the conveyance to

the McCarthys, and from the record before us we question the right of Garden Park Homes Corp. to take away that which it previously dedicated to St. Louis County. In addition, by the restriction indenture Garden Park Homes Corp. provided that "all easements as shown on said plat shall be and the same are hereby set aside and reserved for wires, poles, water and gas mains, sewers and subdivision utilities, essentials and facilities." This presents a question as to whether Garden Park Homes Corp. could subsequently grant the "exclusive" use of the fifty foot area to the McCarthys, or deny the use of the fifteen foot area for the reserved purposes. If the above language of the restriction indenture did not include the fifty foot roadway easement, the same instrument also conveyed to the named trustees "Easements in, over, upon, and across such portions of said land as may now or hereafter be designated as * * * roads, * * *." The extent of this conveyance is somewhat confusing by reason of the language used, but it extended to "The rights, benefits and advantages of having ingress and . egress from and to, over, along and across such * * * roads, * * *." The trustees did not join in the execution of the conveyance to the McCarthys. We point out these matters to demonstrate that there are unanswered questions pertaining to the interests of plaintiffs and of the Mc-Carthys. The dismissal of Count II whereby plaintiffs sought a declaration of those interests was improper.

The judgment is reversed and the cause remanded.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.