**Lester KUHS et al., Plaintiffs,**

v.

**Walter C. KAWELASKE and Melba Kawelaske, Defendants.**

**No. 35531.**

Missouri Court of Appeals, St. Louis District, Division 2.

Nov. 19, 1974.

J. William Newbold, Ziercher, Tzinberg, Human v. Michenfelder, Clayton, for plaintiffs.

Muehlenkamp & Murray, St. Louis, for defendants.

SMITH, Presiding Judge.

Plaintiffs appeal from the action of the trial court in entering judgment against them on their petition for injunctive relief. Plaintiffs are the trustees of Kuhs Acres No. 3, a residential subdivision development. Defendants are the owners of a lot in said subdivision. Defendants have erected a fence around their property without the consent of the plaintiffs and plaintiffs seek a mandatory injunction to compel defendants to remove the fence.

In December 1968, defendants contracted with Muriel Realty Company to buy lot 6 of Kuhs Acres No. 3. The contract provided for seller to "furnish general warranty deed subject to deed restrictions, easements, rights of way of record, and zoning regulations." Defendants were the first purchasers in the subdivision and at the time the sales contract was executed no deed restrictions had been recorded. On February 20, 1969, an indenture of restrictions covering Kuhs Acres No. 3 was recorded. The designated trustees were Lester Kuhs, Edward L. Kuhs, and John S. Soest, all officers and employees of the developer, Muriel Realty Company.[1] The restrictions provide that "No structure, fence, hedge or trellis shall be erected, installed or maintained on any lot without first having had the written consent and approval of a majority of the Trustees."

On February 28, 1969, Muriel Realty Company executed a general warranty deed to Lot 6 of Kuhs Acres No. 3 to defendants. The deed was "Subject to building line, easements, conditions and restrictions of record." Defendants' deed was recorded March 11, 1969. In April 1972, defendants began construction of the fence. Lester Kuhs advised them that the fence violated the restrictions; formal permission was requested by defendants and refused by the two living trustees. Defendants continued with the fence construction and this suit followed.

There was some dispute in the testimony about whether defendants received oral permission from one of the trustees to build the fence. Defendants do not here rely upon such alleged permission and in view of what we said in Minton v. Lichtenstein, 487 S.W.2d 43 (Mo.App.1972) [8] they cannot rely upon such oral permission

1. Soest has since died, and Richard Hartbeck, a resident of the subdivision, was appointed trustee shortly before this litigation.

for the restrictions require written permission.

■ The trial court and the defendants here rely upon a theory of law espoused in Jones v. Garden Park Homes Corporation, 393 S.W.2d 501 (Mo.1965). It was there held that from the time of the execution of the sales contract until the transfer of legal title the vendee is the equitable owner of the property and the vendor holds legal title for the vendee as trustee. Any subsequent conveyance of a portion of the title to a third party without the vendee's consent is a breach of the trust obligation, a breach of the contract and is wrongful as to the vendee. We find nothing in *Jones,* however, that warrants the next step assumed by both the trial court and defendants, that the restrictions are invalid and unenforceable as to defendants. Jones set out the defendants' remedies if they feel that Muriel has breached the contract—(1) rescission (2) damages for breach of contract (3) damages for the tort. But these remedies, if available, are between Muriel and defendants. This cause of action is between the trustees of the subdivision and defendants. The trustees' right to enforce the restrictions is not for the benefit of Muriel but for the benefit of other owners of property within the subdivision who have purchased in reliance upon the existence and binding nature of the restrictions as a protection to their investment.

The precise position taken by defendants has been rejected by this Court in Pappas v. Eighty Hundred Realty Co., 138 S.W.2d 762 (Mo.App.1940). We find the fact situation there indistinguishable from that before us. As we there said:

"Even though it be conceded that plaintiff's grantor breached its contract with plaintiff by placing a restriction as to use on Lot 1, Block 2, before conveying it to him, and that as between plaintiff and his grantor, it had no right to do so, yet, the fact remains it did place the restriction in favor of many third parties on the lot, and other lots it owned, and plaintiff accepted his deed with at least constructive notice of what had been done." [6].

Additionally, defendants were aware that restrictions existed or would exist at the time they received their sale contract for it specifically provided that "Plans for construction of house to be approved by Trustees of Kuhs Acres #3." In fact, they received such approval before building the house.

■ Nor do we find any merit to defendants' contention that the decision on fences is left to the "whim" of the trustees. There is no evidence that the decision was arbitrary or malicious. In the very nature of subdivision restrictions much discretion must be vested with the trustees. We find no abuse of discretion and defendants were at least constructively aware of the discretion vested in the trustees at the time they accepted their deed. The Court erred in refusing the injunctive relief requested by plaintiffs.

Judgment reversed and cause remanded for entry of mandatory injunction consistent with this opinion.

KELLY, and STEWART, JJ., concur.

