**Riley COX and Helen Cox, Plaintiffs-Appellants,**

v.

**Rebecca S. CRIDER, Defendant-Respondent.**

No. 14599.

Missouri Court of Appeals, Southern District, Division Two.

Dec. 4, 1986.

Motion for Rehearing and for Transfer Denied Dec. 29, 1986.

Peggy S. Hedrick, Springfield, for plaintiffs-appellants.

Don M. Henry, Henry, Henry & Henry, West Plains, for defendant-respondent.

MAUS, Judge.

This action arises from a motor vehicle accident. The jury rendered a verdict for plaintiff Helen Cox for $7,000 for personal injury and for both plaintiffs for $4,300 for property damage. The jury found for the defendant upon the claim of Riley Cox for loss of consortium. The jury also determined plaintiff Helen Cox was 60% at fault and defendant 40% at fault. The plaintiffs state seven points on appeal.

The following is a general statement of the facts of the accident. Plaintiff Helen Cox was driving east on a gravel road near Pomona. The defendant was driving west. Defendant testified that as she reached the crest of a hill, she saw the Cox automobile approaching in the middle of the road. Defendant applied her brakes and skidded onto the left side of the road. Defendant said she did not swerve right because a tall bank on the right side prevented her from going right to avoid the collision. Defendant said the Cox automobile did not swerve to the right or left.

Plaintiff Helen Cox did not see defendant's vehicle until it was skidding. At that time the Crider pickup was in the middle of the road. Helen Cox did know where the Crider pickup was when it started skidding. Helen Cox further testified as she approached the scene she was driving on the right edge of the road. After she saw Crider, she swerved to the center of the road. But, she said there wasn't time for her to move more than a foot or two to her left.

The investigating patrolman testified the skid marks left by Crider were 69 feet in length. They started in Crider's lane and extended into the east bound lane. From those marks and a formula he estimated her minimum speed to have been in the 30's. The principal damage was to the right front of each vehicle. The road was 18 feet in width. The debris was located

six feet from the south edge of the road. He concluded that it was entirely possible the Cox vehicle was over the center of the highway at the time of the impact.

■ Plaintiffs' first point is that the evidence does not support an apportionment of 60% of fault to Helen Cox. To support this point, they emphasize the following: Crider was over the center line at the time of the collision; evidence that Crider was going fast; and Crider's uncounseled conviction upon a citation for being on the wrong side of the road. She also relies upon Crider's statement at trial that she did not deny she was at fault.

However, all of the evidence must be considered, not just that favorable to plaintiff. "[A] full and complete review on appeal should not be prevented by hearing only the plaintiffs' evidence." *Jones v. Garden Park Homes Corporation,* 393 S.W.2d 501, 506 (Mo.1965). Furthermore, the evidence must be viewed favorably to the verdict. *Schrock v. Lawrence's Estate,* 327 S.W.2d 836 (Mo.1959).

In argument under this point the plaintiffs ignore the evidence tending to establish that Helen Cox was at fault. Such evidence includes the following. Crider's skid marks started in her lane. The vehicles collided right front to right front. The debris was six feet north of the south edge of the road which was eighteen feet wide. From this the jury could determine that at the time of impact the left side of the Cox automobile was well over the center of the road. The investigating officer testified it was entirely possible the Cox vehicle was over the center of the road at the time of impact. Helen Cox testified that after she saw Crider her automobile moved left only a foot or two. From all these facts the jury could conclude that Helen Cox approached the scene driving over the center of the road, as Crider testified. The jury could further conclude that this action of Helen Cox bore a higher degree of fault than the action of Crider skidding over the center line after she reacted upon seeing the Cox automobile.

■ This apportionment of fault is not nullified by Crider's conviction upon the citation. Nor is it nullified by the fact she did not deny she was at fault. The jury concluded she was at fault. But, under the apportionment of fault doctrine, the jury could also conclude Helen Cox was at fault. The apportionment of fault is supported by the evidence.

■ For their second point plaintiffs state that the apportionment of 60% of fault to Helen Cox renders the verdict for personal injuries so grossly inadequate as to indicate bias and prejudice on the part of the jury. This is an effort to measure the adequacy of the amount of that verdict by the apportionment of fault. Such would improperly interrelate two distinct and independent factors. The point is denied.

■ The third point of Helen Cox is that the verdict of $7,000 for personal injuries is so inadequate the trial court erred in not granting her a new trial. Plaintiffs cite *Durbin v. Cassalo,* 321 S.W.2d 23 (Mo.App. 1959), for the rule that an inadequate verdict should be set aside where it is so shockingly inadequate that it appears to be the result of passion, prejudice or partiality.

The following is a general statement of the injuries to and treatment of Helen Cox. The accident occurred on July 15, 1984. Upon the collision her head hit the windshield and her chest hit the steering wheel. She was rendered unconscious for a short period of time. She was taken by ambulance to a hospital in West Plains and then to St. John's Hospital in Springfield. There she was hospitalized for eight days. Her attending physician was Dr. Michael Ashley, M.D. Following her discharge she was seen by Dr. Ashley on September 7, 1984. Then on March 29, 1985, she saw Dr. Art Bentley, M.D., an orthopedic doctor in West Plains for an evaluation. He referred her to Dr. Lin in Springfield. She saw Dr. Lin for an evaluation. On May 15, 1985, she saw Dr. Paul Weygandt, M.D., in West Plains for an evaluation. He saw her on several occasions and prescribed muscle relaxants and recommended physical thera-

py. She had several physical therapy treatments on her neck. She quit because they did not help. Her total medical expenses were $3,986.63. At the time of the accident she was employed as a valve tester in a manufacturing plant. She lost nine weeks of work. She estimated her wage loss to be $1,865.60.

To establish the gross inadequacy of the verdict she emphasizes her medical expenses and wage loss and the diagnosis of a concussion, chronic cervical strain and a nondisplaced fracture of the sternum. At the trial she testified she had pain in the chest and neck and recurring headaches associated with her neck pain. She relies upon the testimony of Dr. Weygandt. In his opinion she suffered sternocostal separation and cervical strain. He stated symptoms from those injuries could be lifelong conditions.

In citing and relying upon that evidence she ignores evidence tending to establish she sustained no long-term consequences from the accident. That evidence includes the following. Helen Cox worked at a physically demanding job. After she returned to work, she did not miss one day because of the accident. She did not return to her treating doctor. After September 7, 1984, she had received no medical attention until she went to a physician for evaluation on March 29, 1985.

Further, even though hospital procedure called for her complaints of headaches to be recorded, her records disclosed only two such complaints. She made no complaints of a neck injury to Dr. Ashley. Dr. Ashley testified that had she sustained such an injury, it was his opinion the injury would have manifested itself while she was in the hospital, certainly by September 7, 1984. Dr. Weygandt agreed with that proposition.

Dr. Weygandt's diagnosis of a sternocostal separation was based upon her history. She had no separation at the time he saw her. She made no complaint of chest pain to the physical therapist who was prepared to treat a soft tissue injury to the chest. Dr. Ashley found no evidence of a separation. He did not anticipate she would continue to have pain from the nondisplaced fracture of the sternum.

Dr. Weygandt's diagnosis of a cervical strain was based on the presence of muscle spasms and her history. Her X-rays disclosed calcification at the C5 and C6 level. In his written report he found this to be consistent with such injury. When presented with cervical X-rays taken the day of the accident, Dr. Weygandt agreed they showed the identical calcification. He conceded the accident had nothing to do with that calcification and it could have been caused by a prior accident or aging. In this connection, Helen Cox admitted she was in an accident in 1976 or 1977. She was bruised and sore all over. She was off work for three weeks. She didn't know what doctor she saw. When asked if she revealed that accident when her deposition was taken, she answered: "No, I guess I didn't."

The claim of inadequacy must be considered in accordance with determinative established standards for appellate review. Those standards are the following. The plaintiffs bore the burden of proof in establishing the severity of the injuries to Helen Cox they claim demonstrates the shocking and gross inadequacy of the verdict.

When all of the evidence is considered, that evidence developed factual issues concerning the nature and extent of those injuries and the consequences thereof.

> When the trial court has approved a verdict following a claim of inadequacy of damages and has overruled a party's motion for a new trial, our inquiry on appeal is limited to a determination of whether there was substantial evidence to support the verdict and whether the trial court abused its discretion in denying the motion. *Crabtree v. Reed,* 494 S.W.2d 42 (Mo.1973); *Long v. Hooker,* 443 S.W.2d 178 (Mo.1969).

*Tile-Craft Products Co. v. Exxon Corp.,* 581 S.W.2d 886, 888 (Mo.App.1979). In following that admonition this court "must consider the evidence in the light most favorable to the verdict, keeping in mind that

the credibility, weight and value of the testimony is a matter for the jury." Id. at 888. In view of the factual issues presented by all of the evidence, this court cannot say that the verdict was so grossly inadequate to establish the trial court abused its discretion. *Boehmer v. Boggiano,* 412 S.W.2d 103 (Mo.1967).

By their fourth point the plaintiffs contend the trial court erred in assessing all of the costs against them. No case in this state has been cited or found dealing with the assessment of costs under the comparative fault doctrine. The Uniform Comparative Fault Act incorporated in *Gustafson v. Benda,* 661 S.W.2d 11 (Mo. banc 1983), contains no provision dealing with costs. It has often been contended that costs should be apportioned in accordance with the assessment of fault. However, in states such as Missouri that have a statute or rule placing costs, it has been held that the recognition of the comparative fault doctrine does not alter the statute or rule applicable to a case such as this.

Proof by defendants of contributory negligence reduced plaintiffs' recovery in this case, but did not result in any recovery by defendants from plaintiffs. Plaintiffs were clearly the only prevailing parties. There was no showing of any fault on the part of plaintiffs in the conduct of the litigation which would have justified exercise of the trial court's discretion to reduce costs. In the absence of such fault, the trial court was without discretion to reduce the costs to which plaintiffs were entitled as prevailing parties under Rule 54(d), H.R.C.P.

*Abreu v. Raymond,* 56 Hawaii 613, 546 P.2d 1013, 1014 (1976). Also see *Hyatt v. Sierra Boat Co.,* 79 Cal.App.3d 325, 145 Cal.Rptr. 47 (1978); *Spicuglia v. Green,* 302 So.2d 772 (Fla.App.1974). This court adopts that view. See *Hart v. Wright Lumber Co.,* 355 Mo. 397, 196 S.W.2d 272 (1946); *Newton v. Olson-Schmidt Const. Co.,* 248 S.W. 929 (Mo.1923). For distinction it must be observed that this is not an equitable action. See *Boatmen's Nat. Bank v. Rogers,* 352 Mo. 763, 179 S.W.2d 102 (1944).

The plaintiffs cite and rely upon Rule 77.01 which provides: "In civil actions, the party prevailing shall recover his costs against the other party, unless otherwise provided in these rules or by law." The defendant cites *Wells v. Orthwein,* 670 S.W.2d 529 (Mo.App.1984), which is based upon § 514.090. That statute provides: "Where there are several counts in any petition, and any one of them be adjudged insufficient, or a verdict, or any issue joined thereon, shall be found for the defendant, costs shall be awarded at the discretion of the court." Inasmuch as the verdict was for the defendant on the claim of Riley Cox for loss of consortium, that statute is applicable.

■ However, the discretion under § 514.090 is not unbridled. *Evans v. Buente,* 284 S.W.2d 543 (Mo.1955); *Roy A. Scheperle Construction Co. v. Seiferts, Inc.,* 687 S.W.2d 222 (Mo.App.1984). The apportionment of costs must bear some relationship to the verdicts upon all of the issues and the principal issue litigated. *Community Land Corporation v. Stuenkel,* 436 S.W.2d 11 (Mo.1968); *Amitin v. Izard,* 262 S.W.2d 353 (Mo.App.1953). Consideration should also be given to the verdicts on the issues that generated the costs. *Evans v. Buente,* supra.

■ In this case the principal issues litigated were fault and injury. From the record it is apparent those issues generated the costs. On those issues the plaintiffs did recover. In the sense the term is used in § 514.090, they prevailed on the issues. In keeping with the intendment of § 514.-090, it is appropriate that the plaintiffs recover their costs.

■ The plaintiffs' fifth point is that the trial court erred in not granting a new trial in "view of the fact that numerous people on the jury panel stated during voir dire that they knew respondent, that they would lean toward her, and had to be excused for cause, thereby tainting the objectivity of the remaining jurors; ...." It must be noted the record does not demon-

strate the jury was tainted. The court did, after completion of voir dire, excuse four jurors who knew the defendant. They had expressed such sentiments as they would rather not serve or it would be difficult for them to serve. However, three jurors knew one or both of the plaintiffs. One, who had taught the plaintiffs' daughter, was excused for cause. Another juror whose wife was killed in an accident and expressed difficulty in being objective was also excused for cause.

To dispose of the point, it is sufficient to observe the plaintiffs did not move to dismiss the jury. *Robbins v. Brown-Strauss Corp.*, 363 Mo. 1157, 257 S.W.2d 643 (1953). The plaintiffs' argument under this point says, "Standing alone, the failure to dismiss the panel might not have been cause for a new trial." The alleged failure does stand alone. The point is denied.

The plaintiffs' sixth point is that the trial court erred in not granting a new trial because of three reasons pertaining to the composition of the jury. Those reasons are the following. There was reason to believe seven or eight jurors were prejudiced for the defendant and did not disclose that prejudice on voir dire. One juror was not properly drawn from the jury pool. One member was not mentally qualified to serve as a juror.

The asserted factual basis for the first reason is a letter written by Riley Cox to the trial judge. That letter reported that one juror told of this prejudice. On this basis the appellants argue as follows. "Appellant brought the above possibility to the Court's attention in his letter to the judge of December 16, 1985. [L.F. 62] In combination with the grossly inadequate jury verdict, the Court should have inquired as to the possibility of the matter."

■ The other reasons were purportedly raised in similar manner and are supported by similar argument. It is not necessary to consider the limitations upon the impeachment of a verdict. *Smugala v. Campana*, 404 S.W.2d 713 (Mo.1966). To state the above argument is to state why the point has no merit. The letter referred to and similar letters present nothing for consideration. They were subject to a motion to strike. *Williams v. Deere & Co.*, 598 S.W.2d 609 (Mo.App.1980). Even were the letters considered pleadings, they were not self-proving. "The general rule is that an appellate court will not consider matters *dehors* the record." *Browning-Ferris Ind. of Kansas City v. Dance*, 671 S.W.2d 801, 807 (Mo.App.1984) For these reasons, the point has no merit.

■ Plaintiffs' last point urges this court to grant a new trial because her trial counsel was ineffective in failing to preserve error and because of other alleged deficiencies. Her counsel on appeal was not her trial counsel. An extended discussion of this point is not necessary. Plaintiffs cite no authority to support this point. Nor do they state there is an absence of authority. In fact, plaintiffs present no argument whatsoever to support that point. "Absence of citation of relevant authority for alleged points of error ordinarily justifies the appellate court to consider the point as being abandoned. ... If the point of error is one for which precedent is appropriate and available, then it is the obligation of the appellant to cite it, if he expects to prevail." *Claspill v. City of Springfield*, 598 S.W.2d 183, 186 (Mo.App. 1980) (citations omitted). Also see *Morris v. Willis*, 338 S.W.2d 777 (Mo.1960); *W.H. Powell Lbr. Co. v. Federal Land Bank*, 561 S.W.2d 700 (Mo.App.1978). The point is denied. The judgment is modified to assess the costs against the defendant. As so modified, the judgment is affirmed.

PREWITT, P.J., and FLANIGAN, J., concur.

HOGAN, J., recused.