**Teresa M. HAVEL, Appellant,**

v.

**Karren L. DIEBLER, Respondent.**

**No. WD 45027.**

Missouri Court of Appeals,
Western District.

July 21, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Sept. 1, 1992.

Douglass F. Noland, Norton & Norton, P.C., Kansas City, for appellant.

William P. Coates, Jr., McAnany, Van Cleave & Phillips, P.A., Kansas City, for respondent.

Before HANNA, P.J., and FENNER and ULRICH, JJ.

ULRICH, Judge.

Teresa M. Havel appeals the judgment awarding her $3,500 [1] for injuries she sustained resulting from an automobile collision. On appeal, Ms. Havel contends that the trial court erred by (I) submitting a jury instruction that was not MAI-approved nor supported by the substantive law; and (II) failing to grant her new trial motion because the verdict did not adequately compensate her for her injuries. The trial court's judgment is reversed with instructions to the trial court to enter judgment of $5,000 in favor of Ms. Havel.

The record on appeal establishes the following facts. On June 14, 1989, Ms. Havel was in her automobile stopped at a yield sign at the intersection of Englewood Road and Antioch Road in Clay County, when the vehicle she was in was struck from behind by Karen Diebler's vehicle. The impact from the collision threw Ms. Havel backward into her seat and moved her vehicle approximately five feet forward. Ms. Diebler admitted that the vehicle she was then driving struck the rear of Ms. Havel's car. Ms. Diebler further testified that she was not looking at Ms. Havel's car at the time of the collision.

Ms. Havel was taken to North Kansas City Memorial Hospital where she was X-rayed, given pain relief medication, and discharged. Ms. Havel continued to complain of ringing noise in her ears and of pain to her upper back. She sought various medical treatments for pain. Dr. Timo-

1. The jury determined Ms. Havel's damages at $5,000 and assessed her fault at 30 percent.

thy Wilson, Ms. Havel's physician, testified about objective findings of injury in Ms. Havel's trapezius muscle and diagnosed Ms. Havel in August of 1989 with a "very mild lumbar strain." Ms. Havel also obtained chiropractic treatment.

Ms. Havel presented medical expenses totalling $3,006.92. She also presented written estimates for automobile repair of $267.31 and $175.31, and a lost wages' claim for $513.03.

Ms. Havel claimed that, as a part of her damages, she was denied admittance into the United States Air Force. Ms. Havel had applied to join the Air Force as an meteorologist. She took a written examination but was disqualified for Officers' Training School because of a claimed spinal problem resulting from the accident and the pendency of the resulting lawsuit. Technical Sergeant Blake R. Highland of the United States Air Force, a witness called by Ms. Havel, opined that the vehicular accident and Ms. Havel's medical history related to the accident prevented her admittance into the United States Air Force. However, Sgt. Highland testified that Ms. Havel's successful completion of Officers' Training School and her appointment as an officer in the United States Air Force were not guaranteed had the accident not occurred. He stated that a number of factors other than passage of the initial physical examination determine whether a person becomes an Air Force officer. Mr. Havel agreed that she was never guaranteed that she would successfully complete Officers' Training School.

In addition to the speculative nature of Ms. Havel's admittance into the Air Force, Ms. Diebler controverted Ms. Havel's claim of damages for non-acceptance into the Air Force with the following evidence. Ms. Havel's physician diagnosed her complete recovery on October 21, 1989. However, she never reapplied to the Air Force after that date and before she had attained her thirtieth birthday, the cut-off age for applying to attend United States Air Force officer training school. Additionally, Ms. Hav-

el's Air Force medical report does not mention any neck, back, or spine problems that allegedly resulted from the car collision. Furthermore, evidence disclosed that had Ms. Havel been commissioned a second lieutenant in the Air Force, she would have received a salary of approximately $20,000, in contrast to her current salary of $31,100.

The jury also received evidence that controverted Ms. Havel's claims of pain and suffering. A month after the accident, Ms. Havel's treating physician found normal range of motion in her neck and normal low back region without discomfort. On October 2, 1989, Ms. Havel reported to her treating physician that her low back felt normal. She was released from further treatment, and Dr. Wilson reported that the cervical strain had been resolved. Once released from Dr. Wilson's care in October 1989, Ms. Havel had no restrictions placed on any of her physical activities. Furthermore, evidence disclosed that Ms. Havel exercises regularly, participates in aerobic dancing, and missed no work because of her alleged ailment, except for the five days immediately following the accident. In October 1990, when Ms. Havel saw Dr. Wilson again, she made no complaints about her back or neck related to the accident. Finally, Ms. Diebler presented the videotaped deposition testimony of her expert medical witness, Dr. Ernest Neighbor, who opined that Ms. Havel had not suffered significant injury in the accident and that she was not permanently injured.

After receiving all the evidence, the jury returned a verdict assessing Ms. Havel's damages at $5,000. The jury assessed Ms. Havel's fault at thirty percent. It is from this judgment Ms. Havel appeals.

I

■ Ms. Havel contends for her first point on appeal that the trial court erred in submitting a jury instruction that was neither MAI-approved nor supported by substantive law.[2] Ms. Havel claims that this

2. The jury instruction in controversy is Instruction No. 8, which stated the following:

In your verdict, you must assess a percentage of fault to plaintiff, whether or not defen-

jury instruction, which submitted that she "failed to keep proper control of her vehicle," is prejudicially erroneous because, according to Missouri law, it gives the jury "a roving commission."

The Missouri Supreme Court in *Miles v. Gaddy*, 357 S.W.2d 897, 900 (Mo. banc 1962), condemned instructions that submit as a ground of negligence a party's failure to control a motor vehicle. The Supreme Court determined that the "failure to control the operation of a motor vehicle is a charge of general negligence and that an instruction which submits it is confusing and constitutes a roving commission." *Id.* The Supreme Court concluded that "the submission ... of failure to control the motor vehicle as a hypothesis of negligence is not a correct statement of either statutory or case law and its inclusion renders the instruction prejudicially erroneous." *Id.* at 901.

Submissions of "failure to properly control ... motor vehicle" instructions have since been condemned by other Missouri court decisions following *Miles. See McIntyre v. Whited*, 440 S.W.2d 449, 451 (Mo. 1969) (submission of a "failure to control" instruction is prejudicially erroneous); *Hicks v. Graves Truck Lines, Inc.*, 707 S.W.2d 439, 447 (Mo.App.1986); *Lucky v. Avon Products, Inc.*, 589 S.W.2d 364, 366 (Mo.App.1979) (by submitting a failure to control instruction, "the trial court failed to confine the jury's consideration to the factual issues and gave the jury a roving commission. Such a submission of general negligence has been frequently condemned.").[3] The trial court's submission of Instruction No. 8 was prejudicially erroneous.

## II

Ms. Havel asserts for her second point on appeal that the trial court erred and abused its discretion in not granting her motion for new trial on the issue of damages because, Ms. Havel contends, the amount of the verdict was inadequate to compensate her for her damages. Ms. Havel submits that medical expenses, lost income, automobile damage, permanency of her medical condition, and her disqualification from the military service warrant a larger damage compensation award.

■ Determination of damages is principally the jury's decision. *Leasure v. State Farm Mut. Automobile Insurance Co.*, 757 S.W.2d 638, 640 (Mo.App.1988). "[W]hen the trial court has overruled a motion for new trial alleging inadequacy of damages, ... the jury's exercise of its discretion is conclusive unless the verdict is so shockingly inadequate as to indicate that it is the result of passion and prejudice or a gross abuse of its discretion." *Id.* The jury is vested with the discretion to enter a verdict for damages which it found reasonably necessary to compensate a plaintiff for injuries resulting from an accident. *Id.* In determining whether a verdict is appropriate, appellate courts must review the evidence in the light most favorable to the jury's verdict. *Cox v. Crider*, 721 S.W.2d 220, 223 (Mo.App.1986). It is the jury's duty to judge the credibility of witnesses and to weigh and value a witness' testimony. *Id.* at 234. The jury's discretion includes accepting or rejecting "all or part of [the plaintiff's] claimed expenses." *Leasure*, 757 S.W.2d at 640.

■ Evidence supports the jury's verdict assessing Ms. Havel's damages at $5,000. The evidence included the videotaped deposition testimony of Ms. Diebler's expert witness, Dr. Neighbor, who opined that Ms. Havel had not suffered any significant injury in the accident and that she was not permanently injured. Additionally, the

---

dant was partly at fault, if you believe:
  First, plaintiff failed to keep proper control of her vehicle, and
  Second, plaintiff was thereby negligent, and
  Third, such negligence of plaintiff directly caused or directly contributed to cause any damage plaintiff may have sustained.

**3.** Ms. Diebler argues that the recent cases condemning the use of "failure to operate a vehicle properly" instruction do so only when that instruction is submitted in conjunction with an instruction charging specific negligence. However, the Missouri Supreme Court in *Miles v. Gaddy* condemned the submission of the instruction by itself. 357 S.W.2d at 900–01.

jury could have reasonably rejected Ms. Havel's claim of damages resulting from her not being admitted into the United States Air Force officer training program. The evidence established that Ms. Havel was not guaranteed admission before the accident, she did not seek admission after her physician informed her of her complete recovery, and admittance into the Air Force would have caused Ms. Havel a reduction, not an increase, in income. Thus, the jury fulfilled its obligation by rendering its verdict, the trial court did not determine that the jury's verdict was against the weight of the evidence, and Ms. Havel has not shown that the verdict is so shockingly inadequate as to indicate bias and prejudice on the part of the jury. Therefore, Ms. Havel's second point is denied.

■ The unique facts in the present appeal require reversal and remand of the cause to the trial court with instructions to enter judgment of $5,000 in favor of Ms. Havel. Ms. Havel cites *Phillips v. Lively*, 708 S.W.2d 369, 373 (Mo.App.1986), as authority for her position that a new trial on all the issues should be granted in the event that the trial court committed instructional error. Ms. Havel cites the following passage from *Phillips* as her support:

> The interrelationship of fault and damages is apparent on the face of the instructions, and it would be a rare case in which a jury would not consider the effect of its determination of percentages of fault in terms of the damages to be eventually awarded to the plaintiff. The issues are undeniably "blended and interwoven."

*Id.*

Appellant's observation in *Phillips* overlooks the instructions by the trial court in this case ordering the jury to consider the issues of liability and damages separately. In the present appeal, the trial court instructed the jury that in assessing liability between the parties, the jury could not consider damages, and vice versa. *See* MAI 37.03. Additionally, the verdict form signed by the jury also makes this distinction clear. *See* MAI 37.07 ("we, the undersigned jurors, find the total amount of plaintiff's damages disregarding any fault on the part of plaintiff to be ...."). Appellate courts recognize that juries perform their duties conscientiously and endeavor to follow the trial court's instructions. To view the amount of damages and percentages of fault as "blended and interwoven" concepts disregards the oath taken by the jury members and their fulfillment of such oaths in this case.[4]

Pursuant to Rule 84.14, "[t]he appellate court shall award a new trial or partial new trial ... or give such judgment as the court ought to give." Thus, this court has the authority to grant either a new trial only on the issue of Ms. Havel's comparative fault or order the trial court to enter full judgment in favor of Ms. Havel. For the following reasons, this court chooses to exercise the latter option. First, the jury's award of damages is a proper exercise of discretion. Second, the jury determined the issue of fault and damages separately. Finally, Ms. Diebler has stated in her brief that, if this court finds the trial court committed prejudicial error in submitting Instruction No. 8, she concedes liability, waives comparative fault determination, and asks that this court direct entry of judgment for the full amount of the damages against her. Accordingly, pursuant to Rule 84.14, the trial court's judgment of liability is reversed and the cause is remanded with instructions to enter judgment of $5,000 against Ms. Diebler and in favor of Ms. Havel.

All concur.

---

**4.** The *Phillips* court recognizes that a trial court "may still have some narrow discretion to order a new trial on damages alone ..." pursuant to Rule 78.01. 708 S.W.2d at 373.